Esley, BARRETT, III, et al., Plaintiffs,

v.

Henry W. KALINOWSKI et al., Defendants.

Civ. No. 77–1129.

United States District Court, M. D. Pennsylvania.

Oct. 3, 1978.

As Corrected Nov. 20, 1978.

Raymond L. Hamill, Honesdale, Pa., Robert J. Fields, Waymart, Pa., Stephen Jennings, Honesdale, Pa., O. Randolph Bragg, David F. Bianco, N. Pa. Legal Services, Scranton, Pa., for plaintiffs.

Jered L. Hock, Metzger, Wickersham, Knauss & Erb, Harrisburg, Pa., John C. Mascelli, Scranton, Pa., for defendant Kalinowski.

Thomas F. Kilroe, Honesdale, Pa., for third party defendants.

John F. Spall, Conway, Barna & Spall, Honesdale, Pa., for third party defendant Perkins.

OPINION

MUIR, District Judge.

## I. Introduction.

The Plaintiffs in this action, Esley Joseph Barrett, III, Timothy Benson, Robert Carroll, and William Healey filed this action pursuant to 42 U.S.C. § 1983 on behalf of themselves and all others similarly situated alleging that the Department, Henry W. Kalinowski, the Sheriff of Wayne County, Pennsylvania, and ex officio Warden of Wayne County Prison, Honesdale, Pennsylvania, violated their constitutional rights. On June 7, 1978, following a hearing directed to the issue of whether a class should be certified, the Court declined to treat this case as a class action. Carroll withdrew as a Plaintiff on June 26, 1978. A trial on the questions of permanent injunctive relief and monetary damages was scheduled to be held in September, 1978 in Scranton, Pennsylvania. Prior to the holding of the final pre-trial conference, counsel for all parties advised the Court that the case had been settled with the exception of the issue of attorney's fees. A hearing on that issue was held before the undersigned judge on September 18 and 19, 1978. The following represent the Court's findings of fact, discussion, and conclusions of law.

## II. Findings of Fact.

1. Plaintiffs Barrett, Healey, and sometime Plaintiff Carroll were formerly inmates of the Wayne County, Pennsylvania jail.

2. Plaintiff Benson is still incarcerated in the Wayne County Jail.

3. Carroll voluntarily withdrew from the action in June, 1978.

4. At the time of the filing of the suit, Plaintiffs Barrett, Benson and Carroll were prisoners in the Wayne County Jail and Plaintiff Healey was a prisoner in the State Correctional Institution at Dallas.

5. Defendant Kalinowski is the Warden of the Wayne County Jail.

6. Plaintiffs' counsel in this case are O. Randolph Bragg, Raymond Lloyd Hamill,

Stephen Jennings, Robert J. Fields, and David F. Bianco.

7. Mr. Hamill graduated from Dickinson College in 1972 and from the University of Pittsburgh Law School in 1975.

8. Mr. Hamill began the practice of law in November, 1975, with Northern Pennsylvania Legal Services in Scranton and subsequently became office manager for that organization in Honesdale, Pennsylvania.

9. This case is the first prisoner civil rights action in which Mr. Hamill has participated.

10. In 1977 Mr. Hamill attended a Practicing Law Institute seminar on civil rights litigation and in 1978 attended a seminar lasting one week in Connecticut given by the Legal Services Corporation dealing with federal practice and procedure.

11. Mr. Hamill claims compensation for 231.75 hours devoted to the prosecution of this case.

12. Mr. Hamill started private practice in Honesdale, Pennsylvania, on August 1, 1978.

13. Mr. Hamill's present hourly rate is $30.00 per hour for conferences and his rate for litigation is $40.00 per hour.

14. Mr. Hamill testified that he would charge $50.00 per hour for litigation of a complex case.

15. Mr. Hamill has never charged a client at the rate of $50.00 per hour.

16. Mr. Hamill claims compensation at the rate of $50.00 per hour for his work in this case.

17. The number of hours asserted by Mr. Hamill to have been devoted to this case, 231.75, multiplied by $50.00 per hour equals $11,587.50.

18. The time claimed by Mr. Hamill does not cover all of the services rendered by him in this case.

19. Prior to August 1, 1978, Mr. Hamill spent 182.75 hours on this case and on and after August 1, 1978, up to the date of the hearing, spent 49 hours on the case.

20. The Plaintiffs in their complaint alleged a large number of constitutional and statutory violations by the Defendant.

21. Mr. Hamill spoke with nine deputies in the Sheriff's Office, other county employees, and prisoners in his investigation of this case.

22. Most of the persons with whom Mr. Hamill spoke showed great reluctance to discuss the alleged violations of the Plaintiffs' rights.

23. The Plaintiffs encountered some difficulty in proving that telephone conversations of the named Plaintiffs were ever tapped.

24. Prior to this case, Mr. Hamill never had any legal experience relevant to this case and in particular had no prior federal practice, had no prior civil rights practice, no experience in prisoner litigation, and no experience in class actions.

25. Mr. Hamill at the suggestion of Plaintiffs Barrett and Benson interviewed Plaintiff Healey to ascertain if he wished to join this action.

26. Mr. Hamill charged for his travel time the same as for his other services in this case.

27. The driving time between Honesdale and the State Correctional Institution at Dallas one way is approximately one and one-half hours.

28. Mr. Hamill interviewed Benson between 25 and 30 times, interviewed Barrett a like number of times, interviewed sometime Plaintiff Carroll 12 times and interviewed Healey once.

29. The driving time is approximately one and one-half hours round trip from Scranton to the State Correctional Institution at Dallas.

30. The driving time between Honesdale and Waymart is one-quarter hour.

31. The driving time between Honesdale and Scranton is 45 minutes one way.

32. Mr. Hamill's travel did not begin before 8:00 A.M. or end after 6:30 P.M. on any day.

33. The particular services rendered by Mr. Hamill on November 7, 1977, May 22, 1978, May 23, 1978, May 24, 1978, and May 26, 1978, were not noted on Mr. Hamill's time records or in his application for fees.

34. The amount of time relating to the entries in the preceding paragraph is a total of 18 hours.

35. Mr. Hamill drove to Scranton from Honesdale round trip for the meeting with Mr. Bragg on May 29, 1976.

36. Two conferences between Mr. Hamill and Mr. Carroll, sometime Plaintiff, on June 2, 1978 and June 5, 1978 totalled 4.5 hours.

37. The July 14, 1978 and July 16, 1978 entries by Mr. Hamill on his time sheets and on his claim for compensation totalling 6.5 hours show only "briefs" without indicating what briefs were involved and Mr. Hamill does not remember which briefs were involved.

38. Some of the two and a half hours spent by Mr. Hamill on July 28, 1978 on brief to strike Defendant's brief related to a matter ultimately held by the Court to be moot but the precise amount of time so spent is not ascertainable.

39. None of the Plaintiffs' motions to compel discovery were granted by the Court.

40. At least 23 hours and 23 minutes of Mr. Hamill's time spent on May 8, 1978, June 19, 1978, July 12, 1978, July 13, 1978, July 28, 1978, July 14, 1978, and July 16, 1978 were devoted to discovery matters on which the Plaintiffs did not prevail.

41. The amount of time devoted by Mr. Hamill to class action certification questions on which the Plaintiffs did not prevail on May 2, May 17, May 29, and May 30, 1978 totalled 24 hours 40 minutes.

42. The Plaintiffs' motion for class certification was denied on the 7th day of June, 1978.

43. Mr. Hamill spent 16.75 hours in drafting the complaint.

44. Messrs. Hamill, Bragg, and Bianco were all employed by Northern Pennsylvania Legal Services until July 31, 1978 and Mr. Bragg is still so employed.

45. Messrs. Jennings and Fields during this litigation have been engaged in the private practice of law.

46. 25% of the operating funds of Northern Pennsylvania Legal Services are derived from Legal Services Corporation, a federal instrumentality.

47. The log at the Wayne County Jail showed that for 78 days consecutively beginning about August, 1977, prisoners were not given outdoor exercise.

48. Mr. Hamill did not make any real effort to refer the case to private counsel.

49. The meetings of Mr. Hamill with Plaintiff Carroll on June 2, 1978 and June 5, 1978 related to Carroll's desire to withdraw as a Plaintiff.

50. Stephen Jennings, counsel for the Plaintiff, received a Baccalaureate degree from Duquesne University in 1971 and a J.D. degree from the Catholic University of America in 1974.

51. Mr. Jennings was sometime employed by the U.S. Indian Claims Commission and the U.S. Indian Health Service of the United States Department of Health, Education, and Welfare.

52. Mr. Jennings was admitted to the bar in December, 1974 and has been in the private practice of law since June 1, 1975.

53. Mr. Jennings spent 74 hours on this case.

54. Mr. Jennings claims compensation at the rate of $50.00 per hour.

55. The amount of compensation requested by Mr. Jennings is $3700.00.

56. Mr. Jennings' out-of-pocket expenses are less than $20.00 with respect to this litigation and none of those expenses are being claimed by him.

57. Mr. Jennings sometimes charges $40.00 per hour.

58. Mr. Jennings as a second year law student worked for the Native American Rights Fund on civil rights cases and class actions.

59. Mr. Fields shows a half hour conference on December 20, 1977 in his time records with attorney Hamill.

60. Messrs. Hamill and Jennings each show a 3-way conference among Hamill, Jennings and Fields lasting an hour and a half on December 20, 1977.

61. Mr. Jennings shows in his time records a conference on January 2, 1978 with Attorneys Hamill and Fields lasting one hour.

62. Mr. Hamill's time records show no meeting with anybody on January 2, 1978.

63. Mr. Fields' time records contain no entry for any services rendered in this case on January 2, 1978.

64. Mr. Jennings was to have been lead trial counsel if this case went to trial.

65. Mr. Jennings' time records for January 24, 1978 show a conference with Mr. Hamill lasting two hours.

66. Mr. Hamill's time records for January 24, 1978 do not show a conference with Mr. Jennings.

67. The time records of Messrs. Jennings, and Hamill show a half hour conference between Messrs. Jennings, Hamill, and Fields on January 27, 1978 but Mr. Fields' time records do not have any entry for this conference.

68. Mr. Jennings' time records for February 9, 1978 show a conference with Attorney Hamill lasting one hour.

69. Mr. Hamill's time records for February 9, 1978 show a conference with Mr. Jennings and Mr. Fields lasting one and one-half hours.

70. Mr. Fields' time records show no entry for February 9, 1978.

71. Mr. Hamill's time records for May 12, 1978 show a conference with Mr. Jennings lasting two hours.

72. Mr. Jennings' time records for May 12, 1978 show a conference with Mr. Hamill lasting one hour.

73. Mr. Jennings' time records for June 2, 1978 show a conference with Mr. Carroll, sometime Plaintiff, lasting two hours.

74. Mr. Jennings' time records on June 5, 1978 show a conference with Mr. Carroll, sometime Plaintiff, lasting two and one half hours.

75. On March 6, 1978, Jennings' time records show a conference with Messrs. Hamill and Fields lasting one hour.

76. On March 6, 1978, Hamill's time records show a conference with Messrs. Fields and Jennings lasting one hour.

77. Fields' time records for March 6, 1978 show no entry for this case.

78. Robert J. Fields was granted a Baccalaureate degree by Belmont Abbey College in 1968 and a J.D. degree by the University of South Carolina School of Law in 1974.

79. Mr. Fields was admitted to the Bar in November, 1974, and was employed as a lawyer by the Northern Pennsylvania Legal Services under its predecessor name from his admission to the bar until September, 1976.

80. From September, 1976, Mr. Fields has been in the private practice of law as a sole practitioner.

81. Mr. Fields spent in excess of 20 hours in work on this case and requests compensation for 19 hours.

82. Prior to his work in this case, Mr. Fields had no experience in federal litigation or federal procedure.

83. Mr. Fields claims compensation at the rate of $40.00 per hour and $50.00 per hour.

84. Mr. Fields has no normal hourly billing rate.

85. Mr. Fields made no charge in this case for travel time.

86. Mr. Fields practices for the most part in Wayne County, Pennsylvania.

87. Mr. Fields was never involved in a class action prior to this case.

88. The time claimed by Mr. Fields as devoted to this case, 19 hours, multiplied by $40.00 per hour and $50.00 per hour equals $760.00 and $950.00 respectively.

89. Mr. Fields participated in the December 20, 1977 conference with Messrs. Jennings and Hamill for only one-half an hour.

90. David F. Bianco was granted a Baccalaureate degree by the University of Pennsylvania in 1973 and a J.D. degree by the Dickinson School of Law in 1976.

91. Mr. Bianco following his admission to the bar spent 10 months as an assistant attorney general for the Commonwealth of Pennsylvania.

92. Mr. Bianco was employed by Northern Pennsylvania Legal Services, Inc. from August 1, 1977 through August 18, 1978.

93. Mr. Bianco has been in private practice since August 19, 1978.

94. Mr. Bianco claims compensation at the rate of $40.00 per hour to $50.00 per hour.

95. Mr. Bianco had no established hourly rate while employed by Northern Pennsylvania Legal Services.

96. Mr. Bianco claims compensation for 11 hours work in this case.

97. Mr. Bianco participated in the action of Davey vs. Pizzo, a civil rights action instituted by Davey *pro se* against the Warden of the Lackawanna County Jail which was ultimately settled before trial but after the drawing of the jury.

98. Many of the issues in this case are parallel to the issues raised by the Plaintiff in Davey v. Pizzo.

99. Mr. Davey represented himself until about one month before the case came on for trial before the undersigned judge.

100. Mr. Bianco claims between $440.00 and $550.00 as compensation in this case.

101. Mr. Bianco has no hourly billable rate with respect to his present private practice.

102. Mr. Bianco's assessment of a proper hourly rate for his services is based upon his discussions with other counsel while in the Attorney General's office and subsequent thereto.

103. Mr. Bianco spent six hours on February 10, 1978 with respect to the class action question in this case.

104. Mr. Bianco spent one and one-half hours in travel time on May 12, 1978.

105. The time spent in travel on May 12, 1978 by Mr. Bianco was during regular business hours.

106. On July 28, 1978, Mr. Bianco proofread a motion for protective order in this case and mailed and filed said motion at an expenditure of one hour.

107. O. Randolph Bragg is an employee of Northern Pennsylvania Legal Services, Inc. who obtained his Baccalaureate degree from Fairmont State College, Fairmont, West Virginia in 1970 and his J.D. degree from West Virginia University in 1973.

108. Mr. Bragg was employed as executive director of Legal Services at Bluefield, West Virginia from May, 1973 through August, 1973, was employed by Luzerne County Legal Services from September, 1973 through December, 1974, was employed by Pennsylvania Legal Services Center, Harrisburg Project, as Director of Senior Citizens Law Project from January, 1975 through January 31, 1977 and has been employed since February 1, 1977 to this date as Deputy Director of Northern Pennsylvania Legal Services, Inc.

109. Mr. Bragg has had prior experience in prisoner cases, having tried in the fall of 1973 before the Honorable R. Dixon Herman, a case involving a prisoner at the State Correctional Institution of Dallas against several Defendants, including Superintendent Jeffes.

110. In the Fall of 1977, Mr. Bragg was involved in the case of Davey vs. Pizzo above-mentioned.

111. Mr. Bragg has also participated in several other prisoner actions including:

Poole vs. Pizzo

Stephenson vs. Warren

Liggan vs. Lightcap and

Kallinger vs. Shapp and others originally involving five separate cases but which have been consolidated.

112. The cases of Poole vs. Pizzo and Kallinger vs. Shapp, et al. are pending before the undersigned judge.

113. Mr. Bragg was appointed by the undersigned judge to serve as non-compensated counsel in Kallinger vs. Shapp, et al. in September of 1978.

114. Mr. Bragg was tangentially involved in the class action of Roe vs. Wohlgemuth in the Summer of 1974 before a three-judge district court including Circuit Judge Arlin M. Adams, District Judge Herman, and the undersigned judge.

115. Mr. Bragg briefed the case of Yearsley vs. Scranton Housing Authority and another case against that Defendant which are pending before Honorable William J. Nealon.

116. In the Fall of 1973, Mr. Bragg attended a conference in Boston held by Legal Services, in 1974 attended an American Trial Lawyers program in Boston concerning federal procedure, in 1977 attended a Practicing Law Institute seminar on Civil Rights, and in 1978 attended another Practicing Law Institute seminar on procedural aspects of civil rights litigation.

117. Mr. Bragg has lectured on prisoner's rights to legal services lawyers and paralegals.

118. Mr. Bragg requests compensation at the rate of $60.00 per hour.

119. Mr. Bragg devoted 159 hours to this case.

120. Mr. Bragg has no regular hourly billing rate.

121. Mr. Bragg claims compensation for 159 hours at $60.00 per hour which equals $9540.00.

122. Healey wrote to the Court on May 28, 1978 requesting to withdraw from the action.

123. Mr. Bragg spent 3 hours on June 8, 1978, in the meeting with Plaintiff Healey convincing Healey to remain in the action.

124. Mr. Bragg spent 3½ hours on June 8, 1978, on pendent jurisdiction matters.

125. On June 12, 1978, Mr. Bragg wrote to the Court stating that he had met with Mr. Healey and Mr. Healey desired to remain as a Plaintiff in this case.

126. On June 25, 1978, Mr. Bragg spent 3 hours in research on and preparation of a brief in response to removal of in forma pauperis status for Benson and Barrett.

127. Benson's in forma pauperis status was revoked by the Court.

128. The time spent by Mr. Bragg on June 25, 1978 on said research and preparation of brief would have been so spent even if only one of the two of Benson and Barrett were involved.

129. On August 12, 1978, Mr. Bragg spent ¼ hour on a motion to compel production of documents.

130. On August 22, 1978, the Plaintiffs filed a motion to compel production of documents and the motion was ultimately declared moot by the Court because of the settlement.

131. Of the 5½ hours of time recorded on January 26, 1978 by Mr. Bragg at least one and one-half hours is travel time.

132. Mr. Bragg spent a total of 51 hours on class certification matters on the following dates in 1978: January 28, January 30, February 21, March 2, March 3, March 8, March 10, March 15, March 16, March 18, March 20, April 8, April 10, April 11, April 13, April 19, May 2, May 3, May 11, May 17, May 18, May 19, May 29, and May 30.

133. Mr. Bragg spent a total of 15½ hours on pendent jurisdiction matters in 1978 on the following dates: June 1, 3, 4, 5, 7, 8, and 9.

134. This Court declined to exercise pendent jurisdiction with respect to the state claims of Plaintiffs.

135. On June 26, 1978, of the 8½ hours claimed by Mr. Bragg, 4½ to 5 hours was spent on the Healey deposition, including travel time of one and one-half hours, and the balance is attributable to an aborted deposition of Mr. Bragg's client Barrett who was scheduled to appear at a deposition in Honesdale but failed to appear.

136. The deposition of Carroll scheduled for June 26, 1978 in Honesdale was cancelled several days before the deposition.

137. On August 31, 1978, Mr. Bragg spent one and one-half hours in research on and preparation of the in forma pauperis brief for Barrett.

138. Mr. Bragg spent seven hours in research with respect to the complaint and drafting the complaint on November 23, December 6, December 8, December 13, and December 15, all of 1977 and spent 3 additional hours in an interview with Plaintiff Healey on November 28, 1977 relating to the complaint.

139. Mr. Jennings spent 3 hours working on the complaint on November 29, December 5, and December 12, 1977.

140. A total of 29.75 hours was spent on the complaint by attorneys Bragg, Hamill and Jennings.

141. Of the time recorded by Mr. Bragg on December 28, 1977 of 3½ hours, relating to a conference with Messrs. Hamill and Fields, Mr. Bragg's travel time was one and ¾ hours.

142. Mr. Bragg spent one and one-half hours on travel on January 23, 1978.

143. Mr. Benson's in forma pauperis status was revoked June 25, 1978.

144. Mr. Hamill was to be assistant trial counsel in the case.

145. Mr. Bragg does not know whether or not the travel time on January 26, 1978 was during regular business hours.

146. Mr. Bragg's travel time on June 26, 1978 did not begin before 8:30 A.M. and did not end after 6:30 P.M.

147. The practice of law for Wayne County attorneys is largely confined to negligence, real estate, and estate law.

148. Compensation of counsel in Wayne County in negligence work is normally on a contingent basis for counsel for Plaintiffs and in real estate and estate work is normally on a percentage basis relating to the value of the real estate or of the estate in question.

149. An hourly rate is charged by Wayne County counsel where they act as local counsel for defendants in negligence work or where they act as counsel for municipalities.

150. For attorneys in Wayne County who have been in the active practice of law for more than five years, the normal hourly billing rate is between $35.00 per hour and $40.00 per hour.

151. In some cases in Wayne County, the billing rate is lower than $30.00 per hour.

152. Wayne County, Pennsylvania, is a seventh-class county.

153. Attorney John C. Mascelli, counsel for the Defendants, was pro se law clerk for the Middle District of Pennsylvania between September, 1975 and March 15, 1977.

154. Mr. Mascelli has been in private practice since March 15, 1977.

155. Mr. Mascelli was sometime law clerk to Justice Eagen, now Chief Justice Eagen, of the Pennsylvania Supreme Court for one year.

156. As pro se law clerk, Mr. Mascelli handled at least 100 prisoner cases.

157. Mr. Mascelli represented the Defendant Glenn in McKenna vs. Glenn, et al. and Attorney Lawrence Ludwig represented the Defendant Updegraff in the same case.

158. The case of McKenna vs. Glenn, et al. went to trial before a jury and the undersigned judge and consumed six trial days.

159. Mr. Mascelli spent 160 hours in the defense of the McKenna case and Mr. Ludwig spent a like amount of time in that case.

160. McKenna was pro se in the case of McKenna vs. Glenn, et al.

161. The jury found in favor of the Defendants in the case of McKenna vs. Glenn, et al.

162. A consent decree in the above-captioned action was filed February 1, 1978 which effectively eliminated the hearing on the February, 1978 list with respect to the

application for a preliminary injunction and which consent decree in itself constituted a preliminary injunction.

163. The consent decree of February 1, 1978 did not provide relief with respect to sub-paragraphs 12, 15, 18, and 21 of Paragraphs D and E of the complaint filed December 15, 1977.

164. Sub-¶ 12 of Paragraphs D and E of the complaint requested that the Sheriff account for hours of manual labor worked by prisoners outside of the cell blocks.

165. Sub-¶ 15 of Paragraphs D and E of the complaint requested an accounting by the Sheriff of past profits from the commissary.

166. Sub-¶ 18 of Paragraphs D and E of the complaint requested that the Sheriff be enjoined from bestowing special privileges on any inmate.

167. Sub-¶ 21 of Paragraphs D and E of the complaint requested an accounting from the Sheriff for individual prisoner accounts and monies allegedly lost therefrom.

168. There were 21 requests for relief in the complaint plus a request for class action certification and requests for compensatory and punitive damages.

169. The consent decree of February 1, 1978 in large part provided the Plaintiffs with most, if not all, of the relief to which the Plaintiffs claimed entitlement under the federal constitution and also provided the Plaintiffs with interim relief on matters under state law with respect to which the Plaintiffs had requested the Court to take pendent jurisdiction.

170. The Agreement of February 1, 1978 did not acknowledge on behalf of the Defendant validity of the pendent state claims of the Plaintiffs.

171. Even before February 1, 1978 counsel for the Defendant requested a settlement proposal from the Plaintiffs and continued to request such a proposal without success until a settlement proposal was finally received from the Plaintiffs on June 8, 1978.

172. The settlement proposal of the Plaintiffs received June 8, 1978 (K35) set out many demands which were not contained in the complaint and amended complaint including, but not limited to, the following:

Law library (¶ 3):
Typewriter
Paper
Pens
Lengthy list of books,
Unnamed other books and legal materials supplementary to the main list

Mail delivery requiring all outgoing mail to be dispatched on the same day (¶ 4)

Minimum requirements for correspondence set forth in Pennsylvania Code 95.234 (¶ 5)

Exercise (¶ 6)

Copies, in some cases more than one, to be delivered to inmates of new prison rules and regulations (¶ 8)

So-called maintenance of commissary to include vending machines regularly stocked, postage, writing paper, pens, pencils, toiletries and other hygenic products(¶ 12)

Medical attention for inmates in segregation(¶ 13)

Recreational equipment, including specifically a set of weights, the cost of such equipment not to be less than $300.00 (¶ 14)

Grievance procedure (¶ 15)

The establishment of a prison board (¶ 16)

New criteria for selection of trustees including right of any prisoner to file a grievance with respect to the appointment of any particular inmate as trustee

173. Defendant's counsel presented to the Plaintiffs a counter proposal for settlement.

174. Plaintiffs' counsel by their response to Defendant's counter proposal requested Defendant's counsel to prepare the precise language intended to be involved.

175. Defendant's counsel prepared language relating to discipline, mail, exercise, reading material, and grievance procedure

and the final agreement substantially follows such language except that there was a change in the implementation of the grievance procedure.

176. Immediately before the class certification hearing in late May, 1978, the Defendant made an offer to settle the damage claims of the Plaintiffs, said offer being less than $550.00 per Plaintiff.

177. On June 8, 1978, the Plaintiffs proposed that as part of the settlement each of the named Plaintiffs be paid $2,000 in damages.

178. At the hearing on counsel fees on September 18, 1978, counsel handed up to the Court a proposed final decree.

179. The cost of the law books provided for in the final decree is approximately $100.00.

180. The following table shows the relationship between items in the complaint and the paragraph of the consent decree.

| | Discipline | Complaint | Consent Decree |
|---|---|---|---|
| 1. | Discipline | E sub–21 | p. 2 ¶ I |
| 2. | Privacy of telephone | | p. 5 ¶ II |
| 3. | Law library | E3 | p. 5 ¶ III |
| 4. | Mail be delivered on receipt | E4 | p. 5 ¶ IV |
| 5. | Mail to be opened only in the presence of prisoners | E5 | p. 5 ¶ IV |
| 6. | Two hours' physical exercise per day | E6 | p. 6 ¶ V |
| 7. | Access to all publications | E7 | p. 7 ¶ VI |
| 8. | Copy of rules | E9 | p. 9 ¶ X |
| 9. | Future profits from commissary | E16 | p. 8 ¶ VII |
| 10. | Audit of commissary sales | E17 | p. 8 ¶ VIII |
| 11. | Damages | F | Not Shown |

181. Each of the three named Plaintiffs under the settlement agreement is entitled to damages in the amount of $550.00.

182. Paragraph II of the consent decree provides for a pay telephone to be maintained in the cell block for inmate use.

183. There was no request in the complaint for the installation of a pay telephone.

184. At the class certification hearing, the Defendant Sheriff admitted that telephone conversations from the jail in 1976 and 1977 were taped by a device which was automatically activated by voice.

185. The Sheriff asserted that the purpose of the taping was to ascertain the identity of a member of his staff who was making long distance telephone calls on the Sheriff's telephone at the cost of the county.

186. The Sheriff testified that the member of the staff who was making unauthorized long distance calls at the cost of the county was ascertained, named him, and that the member of the staff was discharged.

187. Plaintiffs' counsel claimed compensation for 497 hours of time in this case prior to September 18, 1978.

188. All of the federal constitutional claims could have been settled by Plaintiffs' counsel early in this case, and in any event by March 31, 1978, if Plaintiffs' counsel had been so inclined.

189. The amount of time spent by Plaintiffs' counsel in this case was excessive.

190. Five attorneys for the Plaintiffs in this case is an excessive number of attorneys fairly needed to prosecute this action.

191. The offer of $550.00 per Plaintiff from the Defendant was made in recognition that the costs of litigating the matter on the September, 1978 trial list would far exceed the amount of the dollar settlement.

192. The question of what law books, if any, would be provided by the Defendant was the final unresolved equitable question and the Defendant offered to purchase law books at a value of $100.00 because the cost of litigating the question would far exceed the amount offered in settlement and ultimately accepted.

193. The total amount of attorney's fees claimed by Plaintiffs' counsel is $49,364.06 (¶ 38 of Plaintiffs' proposed findings of fact).

194. The third party Defendants are Robert Carmody, Earl J. Simons, William

Fries, Raymond Sweighofer, Frederick A. Halburg, Albert H. Perkins and the County of Wayne.

195. The reasonable hourly rate for attorney Bragg's services in this action is $40.00 per hour.

196. The reasonable hourly rate for attorney Jennings' services in this action is $40.00 per hour.

197. The reasonable hourly rate for attorney Hamill's services in this action is $30.00 per hour.

198. The reasonable hourly rate for attorney Fields' services in this action is $30.00 per hour.

199. The reasonable hourly rate for attorney Bianco's services in this action is $30.00 per hour.

200. The question of whether Plaintiff Barrett's in forma pauperis status should be revoked has not yet been decided by this Court.

### III. Discussion.

This case is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983 to enforce the constitutional rights of the Plaintiffs. The Civil Rights Attorney's Fees Awards Act of 1976 provides that in any action or proceeding to enforce a provision of 42 U.S.C. § 1983, the Court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. The issue to be decided in this case is what amount, if any, represents a reasonable attorney's fee in this case which should be allowed the Plaintiffs under 42 U.S.C. § 1988.

Before considering for what services, if any, the Plaintiffs' counsel should be compensated, the Court must consider two preliminary issues. First, the Court must determine whether the Plaintiffs were the prevailing parties in this action. Second, the Court must consider the question of whether the Plaintiffs are entitled to an award of attorney's fees for those services performed by employees of Northern Pennsylvania Legal Services, Inc., a publicly funded organization which makes no charge to its clients for legal services rendered. If the Court does determine that employees of that organization are entitled to be compensated for their services, then the Court must value those services.

In *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), the Court of Appeals considered the question of who was a prevailing party as defined in the Civil Rights Attorney's Fees Awards Act. The Court stated that the prevailing party on a particular claim as that word is used in F.R.Civ.P. 10(b) is the one who fairly can be found essentially to have succeeded on that claim and that in order to evaluate whether a party has so succeeded, the Court should analyze the results obtained by the party with respect to that claim. The Court of Appeals noted that a fee petitioner cannot be treated as a prevailing party to the extent that he has been unsuccessful in asserting a particular claim. Further, in considering who is a prevailing party for purposes of § 1988, which pertains to claims brought pursuant to 42 U.S.C. § 1983, the Court may not consider pendent state law claims. *Cf. Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 at 1215 (3d Cir. 1978). In general, this case involved numerous allegations that the conditions of confinement at the Wayne County Prison at Honesdale, Pennsylvania, did not pass constitutional muster. The complaint contained 21 requests for relief, three of which related wholly to state law issues. An amended complaint added an allegation relating to the taping of telephone conversations which was allegedly prohibited by a federal statute. Therefore, in determining whether the Plaintiffs were the prevailing parties, the Court must look only to those portions of the complaint which rest upon constitutional allegations. With respect to those claims, the consent decrees, entered into in this case which obviated the need for hearings on the Plaintiffs' requests for both preliminary and permanent injunctive relief granted most of the relief requested by the Plaintiffs. Therefore, it is fair to say that the Plaintiffs essentially succeeded on their constitutional claims notwithstanding the

provision of the final consent decree which states that the parties had not made a determination as to which one was the prevailing party in the action. Consequently, the Plaintiffs do satisfy the "prevailing party" requirement of § 1988.

Three of the five attorneys who represented the Plaintiffs in this case were employed by Northern Pennsylvania Legal Services, Inc., a publicly-funded organization, at the time that they rendered some or all of the services performed. Although the Court's research has disclosed no case law in this circuit relating to the question of whether a prevailing party is entitled to reasonable compensation for the work performed by a public service attorney to whom the prevailing party was not required to pay compensation, other circuits have held that such attorneys are entitled to be compensated. In *Hairston v. R & R Apartments*, 510 F.2d 1090 (7th Cir. 1975), the Court stated that the policy behind statutorily allowed attorney's fees was to encourage compliance with federal law through private action. The Court stated that permitting compensation to public service organizations is an incentive for them to engage in certain types of litigation and that the award of attorney's fees to salaried members of legal service organizations furthered the policy of attorney's fees statutes. *See also Brandenburger v. Thompson*, 494 F.2d 885, 889 (9th Cir. 1974). Additionally, it appears proper to evaluate the services rendered by those attorneys in the same manner as any other attorney's work is valued. Therefore, the Court now turns to the question of what amount, if any, should be allowed to the Plaintiffs' attorneys for their work in this action.

There is a substantial body of case law in this Circuit relating to the question of the standards governing the District Court's discretion to award attorney's fees in a case such as this one. It is necessary, prior to engaging in an evaluation of the services rendered by the particular attorneys in this case and the proper amount of compensation to be awarded to those attorneys, to review the standards set forth by the Court of Appeals, to discuss the procedures set forth in the applicable decisions, and to set out what factors may be considered by the District Court in making its fee award. The basic framework was set forth by the Court of Appeals in *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*). *Lindy I* indicated that the purpose of an attorney's fees award is to compensate an attorney for the reasonable value of the services which he performed in the case. In order to determine that value, the Court must first inquire as to how many hours were spent by the attorney and in what manner those hours were spent. The second inquiry is to value those services. The Court of Appeals stated that a logical beginning in considering any attorney's fees petition is to fix a reasonable hourly rate for the attorneys involved in the case and that the only reasonable objective basis for valuing an attorney's services is derived by multiplying that hourly rate of compensation by the amount of work performed by each attorney. Once such an objective basis has been calculated, the Court of Appeals indicated that a district court should consider at least two other factors, namely the contingent nature of success of the action when it was instituted and the quality of work performed by counsel in the case, including a consideration of the complexity and novelty of the issues presented, the quality of work observed by the district judge, and the amount of recovery obtained through the attorney's services. The Court indicated that any adjustment based upon quality of work should reflect an unusual degree of skill, either exceptionally good or exceptionally poor, because the amount arrived at by multiplying a reasonable hourly rate times the number of hours worked is otherwise reasonable compensation for the attorney's work.

The *Lindy I* standards have been fleshed out by the Court of Appeals in subsequent decisions. In *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d Cir. 1974) (*Merola I*), the Court indicated that compensation should be paid to an attorney only for the time which he spent on matters related to

the end product or in. that case, a settlement agreement and that the burden rested upon the party petitioning for a fee to demonstrate how many hours were actually expended in order to reach that result. The Court also noted that the contingency and quality factors set forth in *Lindy I* represented the means by which a district judge could tailor the attorney's fees award to the actual performance of counsel in the case if the "market value" of his services appeared to be too low or too high. In *Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975), (*Merola II*), the Court stated that in cases which are settled prior to trial, the quality of an attorney's work is largely reflected in the amount of benefit produced for the clients by the settlement and that it was permissible for a district court to reduce the objectively determined fee where the benefit produced does not warrant awarding the full value of the time expended.

The next major exposition of the *Lindy I* principles came in *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (*Lindy II*). The Court considered in more detail the manner in which an attorney's award can be adjusted based upon contingency of the action and quality of work. With respect to the former, the Court stated that the contingent nature of success in the action should be used only to increase a fee award and that such a discretionary increase should be based upon an analysis of the Plaintiffs' burden, including the legal and factual complexity of the case and the probability of the Defendants' liability, the risks in developing the case including the hours risked without guarantee of remuneration, the amount, if any, of out-of-pocket expenses advanced by the attorney, and his development of prior expertise in the area, and whether there was a delay in receipt of payment by the attorney. With respect to the quality factor, the Court noted that quality in general is reflected in the determination of the attorney's reasonable hourly rate but that an additional adjustment on the basis of quality may be made considering the result obtained, including monetary and non-monetary benefit to the Plaintiffs, and an evaluation of the professional methods utilized by counsel. If an adjustment is made on the basis of quality, the District Court must state those factors which support its conclusion, the specific amount by which the fee should be altered, and give a brief statement of its reasons.

The *Lindy* and *Merola* decisions applied to the award of attorney's fees out of monies produced for a class of Plaintiffs and to awards made on the basis of the equitable fund doctrine. In *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), the Court indicated that the same standards should govern the award of attorney's fees under a statute such as the Civil Rights Attorney's Fees Awards Act of 1976. Additionally, some minor alterations in the *Lindy* standards were made. The Court stated that the amount of hours worked by an attorney should not be taken at face value and multiplied by his reasonable hourly rate in order to obtain an objective determination of his fee. Rather, the District Court should consider only those hours worked by an attorney which were reasonably supportive of the claim upon which he prevailed and, in addition, whether it was reasonably necessary for the attorney to spend that number of hours in order to perform those services. The burden of persuasion that a specific number of hours was necessary rests upon the fee petitioner. The Court of Appeals stated that the simplicity of the issues in the case, formerly to be considered only in whether an award should be adjusted upwards based upon the contingent nature of success, may also be used in relation to determining the reasonable number of hours devoted to the case. Where an award is made on the basis of a particular attorney's fees statute, the Court stated that a district court may consider factors relating to the overall reasonableness of the award after the amount of that award has been determined from a consideration of all the *Lindy* factors based upon certain items enumerated in the case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The factors listed in that case

which are not part of the *Lindy* determination include the undesirability of the case, the nature and length of the professional relationship between the attorney and his client, and the amount of awards in similar cases. Additionally, the district court may evaluate the amount of the fee in light of the substantive purposes of the civil rights act. The *Lindy* and *Hughes* standards were reenunciated in *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir. 1978) and in *Prandini v. National Tea Co.*, 585 F.2d 47 (3d Cir. 1978). In *Prandini*, the Court indicated that it was improper for a district court to reduce an attorney's fees award by a particular percentage or amount in an arbitrary or indiscriminate fashion and also that the district court could not reduce an award based upon its belief that some of the work performed in a particular case was duplicative of work performed in other cases unless the Court made specific findings as to the number of hours of duplicative work.

The Plaintiffs in this case entered into a consent decree in settlement of their claims which produced no monetary award based upon any of the constitutional allegations in the complaint. Nevertheless, they have requested attorney's fees in the amount of $49,364.06 which purportedly represents the number of hours expended by the attorneys multiplied by a reasonable hourly rate for each attorney adjusted upward by a factor of 1.5 for the contingent nature of success and by an additional factor of 1.25 because of the benefits produced by the settlement for the Plaintiffs and other persons in a similar position. Keeping the above enunciated decisions of the Court of Appeals in mind, the Court must now consider the question of whether the amount of attorney's fees requested by the Plaintiffs is proper, and if not, what amount of attorney's fees should be awarded in this case.

█ Attorneys O. Randolph Bragg, Raymond Lloyd Hamill, Stephen Jennings, Robert J. Fields, and David F. Bianco all appeared on behalf of the Plaintiffs in this case and performed some amount of services. When more than one attorney is involved in a case, the Court must determine a reasonable hourly rate of compensation for each attorney. *See Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168 (3d Cir. 1975). In setting such an hourly rate, the Court should consider the normal billing rate of each attorney, his legal reputation, and his status such as partner or associate. *See Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973). In this case, the two most experienced counsel were attorneys Bragg and Jennings, each of whom has been in the practice of law in excess of four years. Mr. Bragg, as a legal services attorney, has no normal hourly billing rate. He has requested the Court to compensate him at the rate of $60.00 per hour. However, the Court finds that based upon Mr. Bragg's experience both with his current employer and with other legal services organizations, his status as a deputy director rather than a staff attorney with Northern Pennsylvania Legal Services, and the prevailing rate for attorneys in the Scranton, Pennsylvania area, Mr. Bragg will be reasonably compensated for his services at the rate of $40.00 per hour. Mr. Jennings, who is a private practitioner, requests to be compensated at the rate of $50.00 per hour. His typical hourly billing rate, however, is $40.00 per hour in a case of this type. Mr. Jennings indicated that he would charge more than that for a case which promised to be exceptionally long. However, it is the view of the Court that the length of a case is not a proper consideration for increasing the hourly charge of an attorney and that the proper compensation Mr. Jennings' services in this case, considering his age, experience, and the area in which he practices as well as his normal hourly billing rate, is $40.00 per hour.

█ The level of experience of attorneys Hamill, Fields, and Bianco is essentially similar although Mr. Fields has been in active practice longer than the other two. Mr. Hamill and Mr. Bianco, both of whom are now engaged in private practice of law, have been so engaged for only a short period of time, and while engaged by Northern

Pennsylvania Legal Services, Inc. had no hourly billing rate. Mr. Hamill testified that he has now established an hourly billing rate of $30.00 per hour for conferences and $40.00 per hour for litigation and that although he has never charged $50.00 per hour to a private client would so charge in this case if he were representing a private client here. Mr. Bianco has not yet established an hourly billing rate and Mr. Fields, although he has been in private practice as a sole practitioner since September of 1976 in Wayne County, Pennsylvania, has no hourly billing rate. With respect to Mr. Hamill, it is the view of the Court that a sole practitioner in Wayne County, Pennsylvania with Mr. Hamill's experience, would be reasonably compensated for his work at the rate of $30.00 per hour. The same rate of compensation should be applied to Mr. Fields. Mr. Bianco, who now practices in Lackawanna County, Pennsylvania, and who was employed by Northern Pennsylvania Legal Services in Scranton rather than in Honesdale, would also be reasonably compensated for his services at that rate considering his education, age, experience, the fact that he was a staff attorney for legal services, and the prevailing rate for attorneys in the Lackawanna County area.

■ Once the Court has determined the reasonable hourly rate of compensation of each of the attorneys involved in the case, it must then determine the number of hours worked by each attorney. The Court may not compensate an attorney for work which was not reasonably supportive of claims upon which the Plaintiff prevailed in the case. As the Court of Appeals indicated in *Hughes v. Repko*, 578 F.2d 483 (3d Cir. 1978), determining the number of hours reasonably supportive of successful claims is a two-part inquiry. First, the Court must determine the number of hours actually devoted to prosecuting a successful claim. Second, the Court must consider whether it was reasonably necessary for the attorney to spend that number of hours in order to perform those services.

The Court must first consider what hours worked by each of the attorneys in this case are reasonably supportive of the claims upon which the Plaintiffs prevailed. The Court will consider each attorney in turn and will exclude those hours which were, in the Court's view, not expended in furtherance of the Plaintiffs' constitutional claims.

■ Attorney Bragg claims compensation in this case for 159 hours of work. It is the view of the Court that he should not receive compensation under the Attorney's Fees Awards Act for 75¼ of those hours based upon the following reasons: Mr. Bragg spent 51 hours working on the issue of class certification from January 28 through May 30, 1978. This Court declined to certify this case as a class action following a hearing held on that issue on May 29 and May 30, 1978. Therefore, no benefit was produced to the three named Plaintiffs from the work spent on the class action issue. Further, if some of the time so spent was necessary to obtain relief for the Plaintiffs, the burden of persuasion on that issue rested with the Plaintiffs and it is the view of the Court that they did not advance any evidence that any of the hours spent by Mr. Bragg on the class certification issue were necessary to produce the final consent decree. Additionally, Mr. Bragg spent 15½ hours on the issue of pendent jurisdiction. It is the view of the Court that this time is not allowable for two reasons. First, the Court declined to exercise pendent jurisdiction over the state law claims of the complaint. Second, even if the Court had ruled in favor of the Plaintiffs on the state law issues, *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir. 1978), indicates that an award of attorney's fees under a federal statutory provision may be made only for those claims based upon the particular piece of substantive federal legislation to which the attorney's fees awards act relates. Because § 1988 relates only to claims brought under the Civil Rights Act, pendent state law claims are not included and attorney's fees on those claims may not be awarded. On June 8, 1978, Mr. Bragg spent three hours meeting with one of the Plaintiffs, William Healey, relating to Healey's desire expressed by way of letter to

this Court to withdraw as a Plaintiff in the action. Mr. Healey thereafter through Mr. Bragg expressed his intention to remain as a Plaintiff. However, it is the view of the Court that the Defendant should not be required to pay one of the Plaintiffs' attorneys for time spent in convincing a plaintiff to remain as a party to the action and that such time was not reasonably necessary to obtaining a final settlement in favor of the Plaintiffs. On June 26, 1978, Mr. Bragg spent a minimum of 3½ hours in travel time to and from Honesdale and in time in Honesdale attributable to an aborted deposition of Plaintiff Barrett, one of Mr. Bragg's clients, who was scheduled to appear at a deposition but failed to do so. On August 12, 1978, Mr. Bragg spent ¼ hour working on a motion to compel production of documents which was mooted by the settlement of this case. The Plaintiffs did not persuade the Court that their discovery motions were a necessary or substantial part of the work required to produce the settlement. Finally, Mr. Bragg spent 1½ hours on August 30, 1978 preparing a brief in response to a motion to remove the in forma pauperis status of Plaintiff Barrett. Because the Court has not yet ruled on that motion, compensation for that time may not be awarded here. Consequently, rather than the 159 hours claimed by Mr. Bragg, only 83¾ hours were spent by him on services relating to claims upon which the Plaintiffs prevail.

Mr. Jennings spent a total of 74 hours in the prosecution of this case. Of that time, 4½ hours from June 2 until June 5, 1978 was spent in conferring with Robert Carroll, who thereafter voluntarily withdrew as a Plaintiff in this case. The Plaintiffs have not persuaded the Court that the conferences with Mr. Carroll related to anything which was contained in the final consent agreement or which was necessary to produce that agreement. Therefore, this time will not be allowed and Mr. Jennings' allowable hours will be reduced to 69.5.

Attorney Hamill claims to have spent 231.75 hours in this case. It is the view of this Court that approximately 77 hours of that work is not allowable. First, Mr. Ha-mill rendered certain services on November 7, 1977 and on May 22 through May 26, 1978 but did not note on his time records what those services were and had no present recollection at the time of the hearing as to the nature of the services. This Court's practice order issued in the above-captioned case requires concurrently kept time records including a description of the services rendered on particular dates to be submitted in support of an application for attorney's fees. Further, the Court has an obligation under the *Lindy* cases to determine in what manner an attorney spent his time. Mr. Hamill, like Mr. Jennings, spent 4½ hours on June 2 and June 5, 1978 conferring with Mr. Carroll which is not allowable for the same reason that the time so spent by Mr. Jennings was disallowed. On July 14 and July 16, 1978, Mr. Hamill spent 6½ hours working on "briefs" but his time records do not indicate what was the subject of those briefs and he testified that he was unable to identify the subject matter of those briefs. There were certain issues in the case at that time, including discovery motions, for which the Plaintiffs may not be compensated. Thus, the Plaintiffs failed to carry their burden of establishing that these briefs related to a matter incorporated in the final consent decree. In May of 1978, Mr. Hamill spent 24 hours and 40 minutes on the class action issue. In May, June, and July of 1978 Mr. Hamill spent a minimum of 23 hours and 23 minutes on discovery matters on which the Plaintiffs did not prevail and which the Plaintiffs have not shown were necessary to the formulation of a consent decree. Therefore, the allowable hours worked by Mr. Hamill are approximately 154.

There are no exclusions in the time spent by Mr. Fields.

Mr. Bianco spent 11 hours in the case, 6 of which were devoted to the class action question. Therefore, his allowable hours must be reduced to five.

▇▇▇ With the exception of one matter, the Court has now completed the first two steps required by the *Lindy* decisions,

namely the setting of a reasonable hourly rate for each attorney involved in the case and the computation of those hours which were devoted to claims upon which the Plaintiffs succeeded. At this point, *Hughes v. Repko*, 578 F:2d 483 (3d Cir. 1978) indicates that the Court may determine whether it was reasonably necessary for each attorney to spend that number of hours in order to perform the services. It is the Court's view that both the number of attorneys employed by the Plaintiffs in this case and the number of hours which each attorney spent in the case are excessive. However, there was not sufficient testimony presented at the hearing to permit the Court to make a determination as to how excessive the number of hours was and, in fact, it would be difficult to obtain evidence of record which would permit that kind of a determination to be made. For example, in this case the attorneys for the Plaintiffs testified that they spent a certain number of hours researching and drafting the complaint. A witness for and counsel to the Defendant who is an expert in civil rights matters testified that he could have done it in ⅔ of that time. However, no testimony was produced with respect to the time spent, for example, in taking depositions, preparing briefs on issues on which the Plaintiffs prevailed, or in investigating the case. It is the Court's firm belief based upon its own experience that the total expenditure of time in this case, nearly 500 hours, is grossly excessive when measured in terms of the complexity of the case, the number of issues involved, and what work was actually done. However, without a basis in the record for a specific finding as to excessiveness, the Court is constrained not to make any reduction at this point in the number of hours spent to take that factor into account. It is the view of the Court that an adjustment in the overall fee can be made based upon the Court's impression of excessiveness even though it is not possible to determine how many hours spent by each attorney would have been sufficient to reach the result in this case. This is so because the Court is permitted to compare the fee to the benefit produced

and adjust downward if the fee is excessive without disallowing a specific number of excessive hours. Therefore, as an objective basis for this Court's fee award, the Court will multiply the allowable number of hours spent by each attorney by that attorney's reasonable hourly compensation. Performing such multiplication yields the following results:

| Attorney | Hourly Rate × Allowable Hours |
|---|---|
| Attorney Bragg | $3350.00 |
| Attorney Jennings | 2780.00 |
| Attorney Hamill | 4620.00 |
| Attorney Fields | 570.00 |
| Attorney Bianco | 150.00 |
| Total tentative fee | $11,480.00 |

■ Following the calculation of an objective basis for the fee award, the Court must consider the Plaintiffs' contention that this amount should be multiplied by a factor of 1.5 in order to reflect the contingent nature of success on this action. It is the view of the Court that no such multiplier should be applied. The most extensive exposition of the contingency factor is found in *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976), where the Court stated that with regard to the contingency factor the district court should analyze the Plaintiffs' burden, their risks in developing the case, and whether there was a delay in receiving payment. With respect to the burden, although this case may have been somewhat complex factually because of the large number of violations which were alleged, the legal issues in the case were straightforward and at least with respect to the constitutional issues were based upon well established principles of constitutional law. Although the Court heard little testimony relating to whether it was probable that a verdict would be returned or an injunction issued against the Defendant, the probability of the Defendant's liability in this case was not slight and was asserted under an existing body of case law. With respect to the evaluation of the damages, the Plaintiffs conceded that it would probably be impossible to prove monetary damages for any constitutional violation.

Therefore, the suit was essentially one for injunctive relief. However, that simplified the case both because the Plaintiffs did not need to expend effort in attempting to prove monetary damages and because the Defendant could not assert a good faith liability on the issue of injunctive relief. Further, the risks taken by Plaintiffs' counsel, with the exception of Mr. Jennings, were not large. Those counsel employed by Northern Pennsylvania Legal Services did not risk any hours without a guarantee of remuneration for themselves. In addition, the legal services organization itself does not depend on fee-generating cases for its remuneration and thus its resources including lawyers' time were not so risked. Little, if any, was expended by counsel as unreimbursed out-of-pocket expenses. Only Mr. Jennings spent a substantial amount of time for which he had no guarantee of compensation. Therefore, it is the view of the Court that no increase should be made on the basis of the contingency factor.

With respect to the quality factor, the Plaintiffs have not requested an increase so that issue is not before the Court. However, the Court may also evaluate the quality of work performed by Plaintiffs' counsel in determining whether to decrease the fee award. The Court must consider the result obtained by counsel and evaluate the professional methods which they used. Again, it is the view of the Court that because of counsel's inexperience and also in part because counsel were not under the type of time constraint felt by private counsel in prosecuting a non-compensated case, a large number of hours were expended in this case which were not necessary. Further, that number of hours was not necessary to reach the result obtained. Defense counsel was an experienced attorney in the area of prisoner's rights and evidenced a willingness to settle the case within two weeks after his entry into the case in January, 1978 on behalf of the Defendant. The case easily could have been settled within three or four months of the date of its filing. The final result which was obtained 8½ months after the filing of the complaint was due not only to the effort of Plaintiffs' counsel but also to the fact that defense counsel was willing to accede to demands of the Plaintiffs which were not contained in the complaint and was willing to draft a large number of the provisions of the consent decree himself. Only one of the Plaintiffs in this case is incarcerated in the Wayne County Jail and the consent decree as such benefits neither of the other two Plaintiffs. There is, however, benefit derived by other inmates of the jail as a result of the entry of the consent decree. However, it is the view of the Court that because of the excessive amount of hours spent by Plaintiffs' counsel on the tasks which they performed in order to produce a consent decree in the form finally agreed upon, the fees of the three most active counsel should be reduced by a factor of 25% in order to reflect their inefficiency in performance of legal services and to reflect the fact that a settlement of all substantive issues could probably have been reached no later than March 31, 1978. Thus, the fees to be awarded to attorneys Bragg, Jennings and Hamill as adjusted for the quality of their services, are $2520.00, $2100, and $3540.00 respectively. Mr. Fields and Mr. Bianco did not perform a sufficiently large amount of work to permit the Court to determine that their hours were excessive or were not necessary to the final result produced.

Following consideration of all the *Lindy* factors, it is the Court's duty to consider whether a further adjustment and award should be made based upon the substantive purposes of the Civil Rights Act and upon the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). It is the view of the Court that only one of the *Johnson* factors not included in the *Lindy* guidelines could have any effect on the award in this case, namely the size of awards in comparable cases. However, no evidence of comparable awards was presented at the counsel fees hearing. The Court believes that a further downward adjustment should be made in this case based both upon the substantive purposes of the civil rights act and the ·

purpose behind the Attorney's Fees Awards Act. With respect to the civil rights act, no new constitutional law was produced by the litigation in this case. Rather, the constitutional rights of one current prisoner and two former prisoners in the Wayne County Prison, Honesdale, Pennsylvania, were vindicated although as the Court has indicated, neither Mr. Barrett nor Mr. Healey is currently able to enjoy any benefits from the vindication of his rights. It is important for persons in the position of the Plaintiffs in this case to be able to have redress to the Courts to vindicate their rights. However, an award in excess of $8,000 in a case where no monetary recovery is had by any of the Plaintiffs on their constitutional claims and where only a slight amount of money will be expended by Defendants in order to implement the provisions of the consent decree is not in line with the substantive benefits produced. Further, with respect to the attorney's fees awards act, the purpose of the Act was to encourage private litigation in order to vindicate civil rights. An attorney's fees award of the amount involved in this case is not necessary for that purpose for several reasons. First, legal services attorneys are compensated for their work regardless of whether the Court makes an additional attorney's fees award to them. Therefore, although some award might be justified in order to give them an extra incentive to take civil rights cases, the award should be reduced if it exceeds the amount reasonably calculated to provide a sufficient incentive to legal services organizations. Otherwise, the Defendant in a civil rights case is unjustly penalized, especially in a suit for injunctive relief where it is entirely possible that the Defendant would be immune from money damages. Second, cases such as the instant one have produced similar results where the Plaintiffs were pro se. It has been this Court's experience that private pro se litigation where no attorney's fees are awarded is undertaken in certain circumstances and is an effective vehicle of securing constitutional rights regardless of the attorney's fees statute. Therefore, based upon this Court's perception that the constitutional rights ultimate-ly vindicated by the consent decree do not justify an attorney's fees award in excess of $8,000 and because a lesser award would serve the purposes of both the Civil Rights Act and the Attorney's Fees Awards Act, the Court will again reduce the amounts requested by Attorneys Bragg, Jennings and Hamill by a factor of 25%. Such a reduction produces a compensation for each in the amount of $1900.00, $1600.00, and $2600.00 respectively.

■ Following a consideration of the allowable hours spent by each attorney, each attorney's reasonable hourly rate of compensation, the contingent nature of success in the action, the quality of work performed, whether the results achieved further substantive purposes of the civil rights act, and whether an award in the *Lindy* amount was necessary in light of the purposes of the Civil Rights Attorney's Fees Awards Act of 1976, the Court makes the following determination of compensation of each of the attorneys involved:

| Attorney | Compensation |
|---|---|
| O. Randolph Bragg | $1900.00 |
| Stephen Jennings | 1600.00 |
| Raymond L. Hamill | 2600.00 |
| Robert J. Fields | 570.00 |
| David F. Bianco | 150.00 |
| | $6820.00 |

■ The Plaintiffs have also requested compensation for certain items labelled "costs" and "extraordinary expenses." Under the Civil Rights Attorney's Fees Awards Act, only attorney's fees may be awarded by the Court. An item which is taxable as costs may be submitted to the Clerk by the party for whom judgment is entered. Any other such items may not be recovered. *See Skehan v. Board of Trustees of Bloomsburg State College*, 436 F.Supp. 657, 667 (M.D.Pa.1977).

IV. Conclusions of Law.

1. The amount of attorney's fees properly allowable to the Plaintiffs as prevailing parties in this case under the Civil Rights Attorney's Fees Awards Act of 1976 is $6820.00.

2. No award of costs or extraordinary expenses may be made by the Court under 42 U.S.C. § 1988.

An appropriate order will be entered.