**Robert M. GROOMS, Plaintiff,**

v.

**R. Terry SNYDER, David Petgen, Defendants.**

**No. S 76–131.**

United States District Court, N. D. Indiana, South Bend Division.

Aug. 1, 1979.

Richard Lee Owen II, Lay Advisor, Michigan City, Ind., for plaintiff.

Theodore L. Sendak, Atty. Gen. of Indiana, Charles N. Braun, Deputy Atty. Gen., Indianapolis, Ind., John D. Ulmer, Goshen, Ind., for defendants.

MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The plaintiff, Robert M. Grooms, filed an action under the Civil Rights Act, 42 U.S.C.

§ 1983 in this Court on July 23, 1976. The defendants were all members of the Elkhart County Sheriff's Department or the Indiana State Police. The plaintiff alleged that his arrest on December 2, 1974 and subsequent detention, denied him due process of law as provided by the Constitution. This action was initially pro se, but on plaintiff's motion Richard Lee Owen II was granted leave to appear as his lay advisor. The plaintiff prevailed at trial and subsequently Mr. Owen petitioned this Court for legal assistant fees under 42 U.S.C. § 1988. This is a ruling on that motion.

### Factual Background

The plaintiff, at the initiation of this action, was and is, an inmate of the Indiana State Prison. He was arrested on December 2, 1974 in the investigation of a homicide. He was tried and convicted of that crime. It was this arrest and detention he complained of under 42 U.S.C. § 1983. It was while incarcerated that fellow inmate Richard Lee Owen II came to the assistance of the plaintiff in his civil rights action.

A motion was filed that requested Mr. Owen be permitted to appear as lay advisor to the plaintiff. Along with this motion was a letter from Mr. Owen to the Court dated December 29, 1978 which read in part as follows:

"In the seclusion units here at the prison you do not have direct contact with the law library, you have to go through a third party. I am willing to be Mr. Grooms' lay advisor at this trial, and request this letter to be considered along with the motion filed this date."

On January 2, 1979 the Court granted the plaintiff's motion that Mr. Owen be allowed to act as the plaintiff's lay advisor. The Court further ordered that Mr. Owen should have access to the plaintiff at reasonable times for the preparation of this action, and that Mr. Owen would be present at trial and that all legal records, files and research materials were to be made available to the plaintiff.

At trial the plaintiff prevailed. The jury found that the plaintiff's civil rights had been violated and awarded damages totaling $11,250.00. This decision was appealed by both parties and is pending in the Seventh Circuit Court of Appeals. Mr. Owen is seeking in this cause $505.00 in legal assistance fees for his approximately 35 hours of preparation and trial work.

At issue here is whether a non-attorney lay advocate who is an inmate of a state prison and assists another inmate in the successful prosecution of a civil rights claim under 42 U.S.C. § 1983 is entitled to compensation for his services under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.

Traditionally in the United States the prevailing litigant is not entitled to collect attorney fees from the loser either in the form of court costs or as part of the damages award. At common law costs were not allowed; but for centuries in England there has been statutory authorization to award costs, including attorney fees.

As with most generalizations, this "American Rule" is riddled with exceptions. These may be divided into two general categories: those promulgated by statute and those created by the courts pursuant to their equity powers.

There are two basic patterns to statutory exceptions. The first type requires automatic transference of fees and typically provides if the petitioner prevails he shall be allowed reasonable attorney fees.[1] By contrast, several federal statutes confer discretionary power upon the courts to shift counsel fees from the prevailing litigant.[2] These statutes may detail various guidelines on which the court must make its determination.

The second major source of exceptions to the rule has been the general equity powers

---

1. E. g., 7 U.S.C. § 210(f) (1970) Packers and Stockyards Act of 1921; 45 U.S.C. § 153(p) (1970) Railway Labor Act of 1926.

2. E. g., 15 U.S.C. § 77k(e) (1970) Securities Act of 1933; 42 U.S.C. § 3612(c) (1970) Fair Housing Act of 1968.

of the federal judiciary. Although this power to award attorney's fees has resided in the court for some time, it has been used only within the confines of well established exceptions.

The first such exception may be termed the unreasonable conduct rule. Here the courts have awarded fees to a litigant where an opponent has pursued an action in bad faith or for oppressive reasons. The purpose has been to protect the honest litigant and discourage abuse of the courts.

The second major exception is customarily referred to as the common benefit doctrine. Its purpose is to spread the cost of litigation to those persons benefiting from it. Otherwise, the expense of this "common benefit" would all have to be borne by the individual who brought the action.

The most recent, and last, major exception is the concept of the private attorney general. Here a prevailing plaintiff is awarded attorney's fees when he brings an action not for himself alone but also as a private attorney general. Such a suit must vindicate a policy that Congress considered of the highest priority. It is this concept which 42 U.S.C. § 1988 enunciates.

Modern civil rights legislation reflects a heavy reliance on attorney fees. In 1964, seeking to assure full compliance with the Civil Rights Act, Congress authorized fee shifting for private suits establishing violations of the public accommodations and equal employment provisions. 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k). Since 1964, every major civil rights law passed by Congress has included, or been amended to include, one or more fee provisions.[3] These provisions have been successful in enabling vigorous enforcement of this legislation.

However, the Supreme Court of the United States restricted the equitable concept of the private attorney general in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). There the court held that the circumstances under which attorney fees are

to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine. Congressional utilization of the private attorney general concept can in no sense be construed as a grant of authority to the judiciary to jettison the traditional rule against non-statutory allowances to the prevailing party. *Alyeska, supra,* at 263, 95 S.Ct. 1612. While referring to the desirability of fees in a variety of circumstances the court essentially ruled that only Congress could specify which laws were important enough to merit fee shifting under the private attorney general concept. In dicta, the court expressed the view that the Reconstruction Acts did not contain the necessary authorization for the awarding of fees. This created an anomalous gap in the civil rights laws whereby awards of fees were unavailable in fundamental civil rights cases. E. g., 42 U.S.C. § 1983.

This decision prompted the amendment of 42 U.S.C. § 1988 in the form of the Civil Rights Fees Awards Act of 1976. It was a "response to *Alyeska* [intended to remedy] gaps in the language of these civil rights laws by providing the specific authorization required by the Court in that case, and makes our civil rights laws consistent." 1976 U.S.Code Congressional and Admin. News, pp. 5908, 5912. A private attorney general should not be deterred from bringing good faith actions to vindicate fundamental rights. *Id.* The amendment provided that:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title (42), . . ., the court in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

*Analysis*

It is against this backdrop that Mr. Owen's request for fees and memorandum

---

**3.** E. g., 42 U.S.C. § 3612(c), Title VIII of the Civil Rights Act of 1968; 20 U.S.C. § 1617, the Emergency School Aid Act of 1972; 42 U.S.C. § 2000e–16(b), the Equal Employment Amendments Act of 1972; 42 U.S.C. § 1973*l*(e), the Voting Rights Extension Act of 1975.

in support of his motion must be considered. This Court notes at the outset that this appears to be a case of first impression. Consequently, the movant's authority for his position must be critically examined.

The movant first relies on *Re Equity Funding Corporation of America*, 438 F.Supp. 1303 (N.D.Cal.1977). There in a class action under the Securities Act, some 32 law firms were awarded approximately $7,000,000.00 in fees. The district court was petitioned to fix and direct the payment of attorney's fees out of the settlement fund. The court proceeded as required by F.R. Civ.P. 23(e), to serve as a guardian of the rights of absent class members in approving the settlement. The movant's reliance on the grant of attorney fees in a class action settlement under F.R.Civ.P. 23(e) is misplaced as authority for the interpretation of 42 U.S.C. § 1988. Those statutes are in no way analogous.

The movant next relies on a series of anti-trust cases under the Sherman Act where attorney fees were awarded. The Clayton Act, 15 U.S.C. § 15 provides that any person injured by a violation of the anti-trust laws, shall recover, reasonable attorney's fees. In *Pacific Coast Agricultural Export Association v. Sunkist Growers, Inc.*, the court affirmed an award of attorney fees in a private anti-trust action which established a monopolization of the export of oranges. 526 F.2d 1196 (9th Cir. 1975), *cert. den.* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976). Further, the court allowed the recovery of paralegal expenses. Recovery of paralegal expenses may be appropriate in complex anti-trust cases where highly trained, specialized paralegals perform services that would otherwise be performed by young attorneys. *Pacific Coast, supra.* However, this case is distinguished from the case at bar on its face. The mandatory award of attorney fees under the Sherman Act is very different from the discretionary language allowing awards of fees under section 1988. Secondly, this is not a complex anti-trust litigation, nor is the movant a highly trained, specialized paralegal. Consequently, this authority is unpersuasive.

The movant next relies on *Jones v. U. S. Secret Service*, 81 F.R.D. 700 (D.C. 1979), where a *pro se* federal prisoner was awarded attorney fees under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The language of the FOIA providing for the award of attorney fees allows considerable discretion. It states that "the court may assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). The court observed that "such awards encourage persons to vindicate their FOIA rights" and then went on to consider the reasonableness of the government withholding the material. *Jones, supra,* at 701. The court found that there was no reasonable basis for the government withholding the documents. Had there been a reasonable basis for withholding the documents the award of attorney fees would not have been made. *Id.* The legislative history of the FOIA indicates that there is a strong congressional policy in maintaining an informed public through free disclosure by the Executive Branch of Government. 1974 U.S.Code Congressional and Admin.News, pp. 6267, 6268. The award of fees under this Act is essentially a punitive measure pending against the government if it unreasonably refuses to release its information. Otherwise, the government could effectively defeat the Act by litigating every application. Therefore, even though the language of the FOIA regarding the award of attorney fees is similar to section 1988, the purposes of the two sections are so disparate that this Court does not find the *Jones* case persuasive. The purposes of section 1988 will be more fully examined shortly hereafter.

The final authority relied on by the movant is a case under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1002 et seq., *Carter v. Montgomery Ward and Co.*, 76 F.R.D. 565 (E.D.Tenn. 1976). This statute provides "[i]n any action under this subchapter by a participant,

beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of the action to either party." 29 U.S.C. § 1132(g). The plaintiff in *Carter* was granted fees for his attorney, but none for legal assistants or clerks. Further, the rationale behind this statute is most pertinent. The Fifth Circuit in construing this section, stated that statutes authorizing attorney's fee awards were not passed for the benefit of the attorney but to enable litigants to obtain competent counsel worthy of the contest with the calibre of counsel available to their opposition and to fairly place the economic burden of that litigation. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir. 1974). The legislative history of the Attorney's Fees Awards Act echoes precisely the same sentiments. The purpose of these provisions in section 1988 is to produce fees which are adequate to attract competent counsel, but not produce windfalls to attorneys. 1976 U.S.Code Congressional and Admin.News, p. 5913. The award of fees is not a punitive measure under section 1988, its purpose is to attract competent counsel, contra to the punitive nature of the FOIA.

All of these Civil Rights laws depend heavily upon private enforcement and fee awards have proved an essential remedy. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate those rights in court. 1976 U.S.Code Congressional and Admin.News, p. 5910. If successful plaintiffs were routinely forced to bear their own attorney fees, few aggrieved parties would be in a position to advance the public interest by invoking the powers of the federal courts.

### Conclusion and Order

▆ Under the particulars of this case, the Court does not find these enunciated policies would be furthered by an award of attorney fees to a lay advisor. First, this is not a private attorney general situation. The plaintiff here is not vindicating a congressional policy for the benefit of society, rather his is an individual damages action. Secondly, the movant here is not the "competent counsel" the legislative history speaks of. The movant here has no legal training. He has twice failed to cite most critical authority in a form that could be found without resort to extraordinary techniques. Nor is this a case where the court placed an obligation upon counsel to represent a party, as in an appointed counsel situation. The movant here volunteered to assist the plaintiff. Section 1988 appears to require the existence of an attorney-client relationship. Such a relationship does not exist here, nor is the plaintiff seeking to recover what it cost him to vindicate his rights. The fee award statute refers only to attorney fees, it makes no mention of law clerks, paralegals, secretaries, or office overhead. There is nothing in the wording or legislative history of 42 U.S.C. § 1988 to either compel or allow the award of fees to this movant.

Therefore, in light of the above considerations, it is ORDERED the movant's motion for the award of attorney fees be DENIED. SO ORDERED.