David P. **LANASA**

v.

The **CITY OF NEW ORLEANS, et al.**

**Civ. A. No. 83–3633.**

United States District Court,
E.D. Louisiana.

March 14, 1985.

40

David P. Lanasa, New Orleans, La., for plaintiff.

J. Michael Johnson, Linda Harang, McGlinchey, Stafford, Mintz, Cellini & Lang, P.C., New Orleans, La., for defendants.

ROBERT F. COLLINS, District Judge.

This matter is before the Court on motion of counsel for plaintiff seeking attorney's fees in the above captioned matter. Wherefore, after a careful consideration of the arguments of counsel, the submitted memoranda, the facts of the case and the applicable law, the Court, in its discretion under the terms of 42 U.S.C. § 1988, will award plaintiff attorney's fees in the

amount of One Thousand One Hundred Twenty-Two and 19/100 Dollars ($1,122.19). The Court also finds that counsel for plaintiff is entitled to costs of Three Hundred Ninety-Two Dollars and No/100 Dollars ($392.00).

## REASONS

The plaintiff in this action, David P. Lanasa, has submitted a Motion for Attorney's Fees seeking from this Court an award of $15,170.20. Before discussing the claims of the plaintiff's motion, however, it is necessary to recount the facts surrounding this motion.

The current action was one brought under 42 U.S.C. § 1983 by the plaintiff herein against the defendants, City of New Orleans and one Ernest Singleton, a police officer, employed by the City of New Orleans through the New Orleans Police Department, for alleged deprivation of plaintiff's civil rights at the time defendants arrested him.[1]

On July 30, 1984, three (3) days before the final Pre-Trial Conference, the defendants offered a settlement package to plaintiff, which was accepted by plaintiff and his co-counsel. The "package" offer was made in the form of an Offer of Judgment, pursuant to Fed.R.Civ.P. 68 and provided in part that "[d]efendants offer to plaintiff the sum of $500.00 *plus all court costs and attorney fees accrued to date.*" [Emphasis added.] Plaintiff duly accepted the offer, by allowing a formal acceptance of Offer of Judgment to be filed into the record by both parties on the same day, July 30, 1984.

Defendant reminds the Court that the "package" offer was made by mistake— that the offer was incorrectly drafted; that

from the outset of this litigation, the plaintiff has been offered a total, including all costs and attorney's fees, of $500.00 to settle this case. Defendants assert that they never intended to offer the plaintiff any more than $500.00.[2] Despite all, defendants assert that plaintiff, realizing the mistake, nevertheless accepted the offer as incorrectly drafted, and now comes before the Court seeking $15,170.20 in attorney's fees and costs.

Without urging the alleged mistake further, defendants oppose plaintiff's fee and costs request of $15,170.20 on three grounds:

(1) The hours allegedly spent by the plaintiff litigating this case are excessive;

(2) As a pro se litigant, plaintiff is not entitled to receive any attorney's fees in this case;

(3) The $90.00 per hour fee suggested by the plaintiff for this case is excessive.

Resolution of these three issues begins and ends with an interpretation of the attorney's fee statute, 42 U.S.C. § 1988. The Court first discusses the issue of whether plaintiff, as a pro se litigant, is entitled to attorney's fees.

### A. Whether Plaintiff Proceeding Pro Se Is Entitled To Fees

The question of whether an attorney proceeding *pro se* is entitled to attorney's fees under the Civil Rights Attorney's Fees Awards Act ("Awards Act") cite is clearly one of first impression within this Circuit certainly. Neither plaintiff nor defendant has comprehensively addressed this issue at oral argument or in the briefs submitted. The Court finds plaintiff's citation at oral argument of the Fifth Circuit's decision in *Cazalas v. United States Department of*

---

1. Plaintiff alleges the following:
 On July 15, 1982, at approximately 12:15 a.m., plaintiff was stopped by defendant-Singleton, for an alleged traffic violation. Thereafter, plaintiff alleges, without just cause and without a warrant, plaintiff was arrested by defendant-Singleton. Further, plaintiff alleges that defendant-Singleton, after realizing that there was no probable/just cause for the arrest, proceeded to fabricate charges and/or

reasons for the arrest of plaintiff, in an attempt to justify the arrest. Accordingly, plaintiff argues this action is one for false arrest, false imprisonment and malicious prosecution.

2. Since defendants make no argument that the judgment should be set aside for equitable reasons, we do not address that issue.

*Justice,* 709 F.2d 1051 (5th Cir.1983) unavailing. *Cazalas* explicitly states that the Fifth Circuit has left open the· question whether an attorney proceeding *pro se* is entitled to attorney's fees under the Awards Act. *Id.* at 1055 n. 8 *citing Cofield v. City of Atlanta,* 648 F.2d 986, 987 (5th Cir.1981).

This circuit and others have held, on numerous occasions, that section 1988 is not intended to compensate *pro se* litigants. *Rheuark v. Shaw,* 628 F.2d 297 (5th Cir. 1980); *Cofield v. City of Atlanta,* 648 F.2d 986 (5th Cir.1981). Several other circuits are in accord. *See, Lovell v. Snow,* 637 F.2d 170 (1st Cir.1981); *Pitts v. Vaughn,* 679 F.2d 311 (3rd Cir.1982); *Wright v. Crowell,* 674 F.2d 521 (6th Cir.1982); *Owen v. Lash,* 682 F.2d 648 (7th Cir.1982); *Davis v. Parratt,* 608 F.2d 717 (8th Cir.1979); *Turman v. Tuttle,* 711 F.2d 148 (10th Cir.1983). Likewise, the legislative history supports this conclusion. As the Fifth Circuit has urged in *Cofield* at 987:

> The Civil Rights Fee Awards Act of 1976, 42 U.S.C. § 1988, permits a court in its discretion to allow the prevailing party a reasonable attorney's fee as part of the costs of an action to enforce a provision of, *inter alia,* section 1983. *Cofield* [plaintiff] is not an attorney, yet undoubtedly he devoted considerable time and effort in the pursuit of this claim. We do not suggest that he was an unworthy advocate; to be sure, he has prevailed. Nor do we imply that it is improper for a person to serve as his own advocate. We feel strongly, however, that the intent of Congress in enacting section 1988 would be seriously undermined if we allowed pro se litigants to recover legal fees under that section.

The federal courts, however, have not come to a definitive resolution of the issue in the case where the *pro se* litigant is himself an attorney.[3] Several circuits, including the Fifth, have granted attorney's fees to attorneys who have represented themselves in Freedom of Information Act (FOIA) suits. *See, ˙Cazalas v. United States Department of Justice,* 709 F.2d at 105; *Ellis v. Cassidy,* 625 F.2d 227 (9th Cir.1980); *Cuneo v. Rumsfeld,* 553 F.2d 1360 (D.C.Cir.1977). *See also, Lovell v. Alderete,* 630 F.2d 428, 434 (5th Cir.1980). Since these cases, however, have emphasized the legislative history of the attorney's fee provision of the FOIA and the public service performed by FOIA plaintiffs, the analysis offered does not necessarily focus on the distinctions this Court must face in a Civil Rights Attorney's Fees Awards Act case. *See also, White v. Arlen Realty & Development Corp.,* 614 F.2d 387 (4th Cir.1980) (Truth-in-Lending Act Proceeding); *Pacific Coast Agricultural Export Association v. Sunkist Growers, Inc.,* 526 F.2d 1196 (9th Cir.1975), *cert. denied,* 425 U.S. 959, 96 S.Ct. 1741, 48 L.Ed.2d 204 (1976). The award of fees under the FOIA is essentially a punitive measure taken against the government if it unreasonably refuses to release information. Although the language of the FOIA regarding the award of attorney fees is similar to Section 1988, the purposes of the two sections are so disparate that the Court does not find the *Cazalas* case persuasive on this matter.[4] *See, Grooms v. Snyder,* 474 F.Supp. 380, 383 (N.D.Ind. 1979) (for discussion of legislative history of attorney's fees under the FOIA); 1974 U.S.Code Cong. & Adm.News 6267, 6268.

As noted, the applicable statute herein is 42 U.S.C. § 1988, which states in pertinent part:

> "In any action or proceeding to enforce ... [42 U.S.C. § 1983] ..., the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs."

---

**3.** However, the Eleventh Circuit recently in *Duncan v. Poythress,* 750 F.2d 1540 (11th Cir. 1985) held that a pro se litigant attorney is entitled to fees under § 1988.

**4.** The award of fees is not a punitive measure under Section 1988. Its purpose is to attract competent counsel, contra to the punitive nature of the FOIA. *Grooms v. Snyder,* 474 F.Supp. 380, 384 (N.D.Ind.1979).

The plain language of Section 1988 does not preclude an award of fees to a lawyer representing himself. It is against this statutory backdrop that Mr. Lanasa's request for fees must be considered. Before this, however, the Court must determine whether plaintiff is a "prevailing party" under Section 1988.

■ From the outset, there is no question that Mr. Lanasa, if he is to be awarded fees, may be considered a "prevailing party" under section 1988. *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). The legislative history of the Awards Act specifically defines what is necessary for a plaintiff to be considered to have prevailed on his claim. The Senate Report, for example, states that plaintiffs should be "considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.Code Cong. & Adm. News 5908, 5912. As the Supreme Court has stated in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), "A typical formulation is that 'plaintiffs may be considered prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Id.* 103 S.Ct. at 1939, *quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978). *See also, Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Brown v. Culpepper*, 559 F.2d 274 (5th Cir.1977), *reh. denied*, 561 F.2d 1177. This is true despite the fact that the plaintiff may have settled the litigation by means of a voluntary agreement of the parties. That plaintiff is a "prevailing party," however, may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. *See,* E.R. Larson, *Federal Court Awards of Attorney's Fees* (1981) (for a thorough analysis of legislation and cases construing the term "prevailing party"). Assuming that

plaintiff is a prevailing party, a determination must now be made on whether plaintiff as a pro se litigant is entitled to attorney's fees.

■ Arguing against such a fee request, defendant first relies on that line of cases within this circuit which have clearly held that Section 1988 is not intended to compensate *pro se* litigants. *See, Cofield, supra.* Implicit in defendant's reasoning is that since courts have already refused to grant fees to *pro se* non-attorney litigants, there is no principled basis for awarding fees to attorneys as a result of self-representation.[5] The Court disagrees. The Court does not decide this issue under the simple rubric that one cannot justifiably assert that an attorney representing himself would be more entitled to a fee under the Awards Act than a layperson representing himself. While this line of reasoning may sound admirable, such an assertion would be an oversimplification of the issue. By noting this, the Court is not urging that Congress intended to discriminate between *pro se* civil rights litigants solely on the basis of whether they are licensed to practice law.

Absent express language on this issue, the Court must look to the intent of Section 1988 to determine whether granting attorney's fees to lawyer *pro se* litigants would further those purposes. The ostensible purpose of Section 1988 is to produce fees which are adequate to attract competent counsel. 1976 U.S.Code Cong. & Adm. News at 5913. As defendants so amply point out in their brief:

As was stated by the Fifth Circuit in *Cofield v. City of Atlanta, supra,* at 987, "Elsewhere we have stated that an act allowing attorney's fees 'is not passed for the benefit of attorneys but to enable litigants to obtain *competent counsel....*'" [Citations omitted; emphasis added]. In fact, as quoted in *Cofield v. City of Atlanta, supra,* at 987, it was the intent of Congress that "[t]hese

---

5. Defendant argues that the only fees due in this case under the Offer of Judgment are only those

earned by plaintiff's counsel, Mr. Westerlund and Mr. Angelus.

cases have resulted in fees which are adequate to attract competent counsel, *but which do not produce windfalls ....*"

Brief for defendants at 3.

Nowhere in their briefs or at oral arguments do defendants urge that Mr. Lanasa is not the "competent counsel" under the Awards Act simply because he chose to represent himself in the current litigation. Nor is there evidence to suggest otherwise. To the contrary, plaintiff is just the "competent counsel" the legislative history of the Act · speaks of. The fee provision is designed to promote *vigorous* advocacy on behalf of citizens whose civil rights have been violated and which further an important public interest. Simply put, Congress sought to encourage legal representation. This is exactly what plaintiff Lanasa did. Certainly, the mere fact that Mr. Lanasa is a lawyer and can represent himself does not need Section 1988 in order to pursue his case. Therefore, it makes sense to compensate lawyers for this work. Another overriding intent of Section 1988 is to encourage private citizens to vindicate important constitutional rights. S.Rep. No. 1011, 94th Cong., 2d Sess. 2–3, *reprinted in* 1976 U.S.Code Cong. & Adm.News 5909–10; *Duncan v. Poythress*, 750 F.2d 1540, 1543 (11th Cir.1985). Additionally, Mr. Lanasa may well be considered a "private attorney. general" under the Awards Act. *See* 1976 U.S.Code Cong. & Adm.News at 5910. As the legislative history points out:

> The idea of the "private attorney general" is not a new one, nor are attorneys' fees a new remedy. Congress has commonly authorized attorneys' fees in laws under which "private attorney generals" play a significant role in enforcing our policies. We have, since 1870, authorized fee shifting under more than 50 laws, including, among others, the Security Exchange Act of 1934, 15 U.S.C. §§ 78i(c) and 78r(a), the Servicemen's Readjustment Act of 1958, 38 U.S.C. § 1822(b),

the Communications Act of 1934, 42 U.S.C. § 206, and the Organized Crime Control Act of 1970, 18 U.S.C. § 1964(c). In cases under these laws, fees are an integral part of the remedy necessary to achieve compliance with our statutory policies. As former Justice Tom Clark found, in a union democracy suit under the Labor-Management Reporting and Disclosure Act (Landrum-Griffin), Not to award counsel fees in cases such as this would be tantamount to repealing the Act itself by frustrating its basic purpose. * * * Without counsel fees the grant of Federal jurisdiction is but an empty gesture * * *. *Hall v. Cole*, 412 U.S. 1 [93 S.Ct. 1943, 36 L.Ed.2d 702] (1973), *quoting* 462 F.2d 777, 780–81 (2d Cir.1972).

*Id.* at 5910.

Secondly, defendants assert that the settlement achieved by Mr. Lanasa in the case at bar does nothing to advance the purposes of Section 1983. The Court disagrees. Defendants fail to take into account the indirect benefits that might accrue to other individuals because of this litigation. Clearly, the enforcement of civil rights laws, even in an individual damages action like this one, might deter law enforcement officials from violating civil rights laws in the future.[6] *See, Gibbs v. Town of Frisco City*, 626 F.2d 1218, 1221 n. 4 (5th Cir.1980); *Wheatley v. Ford*, 679 F.2d 1037, 1040 (2nd Cir.1982); *See also, Carey v. Piphus*, 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978) ("[the Act] provided assurances that agents of the State will not deliberately ignore due process rights"). Several policy arguments have been raised by some claiming that awards to pro se litigants will bring caluminous fees to unworthy claims. There is no reason to suspect that the awards of attorney fees to *pro se* attorney litigants will be a source of abusive fee generation. The question of abusiveness

---

6. The Court notes that the Awards Act and the accompanying legislative history do not suggest a need for class actions to recover fee awards. However, the Court makes no determination on whether an actual civil rights violation did occur, since the Offer of Judgment does not provide for liability on defendants' part.

of fees goes to the amount of fees Lanasa may be entitled to, not to his entitlement to fees as a lawyer *pro se* litigant. Accordingly, since an attorney is compensated according to the *Johnson* factors which include experience, reputation, and ability of the attorney, any abusive fees would be subject to careful scrutiny. *Duncan v. Poythress, Id.* at 1544. There is also no reason to suggest that plaintiff sought this *pro se* litigation to support an otherwise inactive practice. If there is, defendants have failed to inform the Court of such a motive. Nor is there any reason to suggest that plaintiff would intentionally invite the humiliation of an arrest by the police to recover attorneys fees.

It is worth noting at this juncture that modern civil rights legislation reflects a heavy reliance on attorney fees. Judge Sharp, of the Northern District of Indiana, urged this point quite clearly when he stated in *Grooms v. Snyder,* 474 F.Supp. 380, 384 (N.D.Indiana 1979):

> All of these Civil Rights laws depend heavily upon private enforcement and fee awards have proved an essential remedy. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If *private citizens* are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate those rights in court. 1976 U.S.Code Cong. & Adm. News 5910. If successful plaintiffs were routinely forced to bear their own attorney fees, few aggrieved parties would be in a position to advance the public interest by invoking the powers of the federal courts.

The standard for awarding fees to successful plaintiffs arguably contains an exception. As stated in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968), a court in its discretion arguably can deny an award of fees where "special circumstances" would render an award unjust.

There is no indication of any "special circumstances" presented by defendant which would justify a denial of attorneys fees to a *pro se* attorney litigant under the Awards Act. *See,* 1976 U.S.Code Cong. & Adm.News 5912. Nor is this Court inclined to find any.[7] The Court finds that defendants' fear that granting of attorney's fees to Mr. Lanasa would result in a "windfall" is unfounded. As the Court observed earlier, a rigorous application of the *Johnson* factors should deter any abusive fee generation.

### B. *Applicable Hourly Rate*

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes district courts to award a reasonable attorney's fee to prevailing civil rights litigants.[8] In enacting the statute, Congress directed that attorney's fees be calculated according to standards currently in use under other fee-shifting statutes:

> It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, see *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), are correctly applied in such cases as *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974); *Davis v. County of Los Angeles* 8 E.P.D. ¶ 9444 (C.D.Cal.1974); and *Swann v. Charlotte-Mecklenburg Board of Education,* 66 F.R.D. 483 (W.D.N.C.1975).

---

7. For a discussion of the few cases which have found "special circumstances" to exist, *see,* E.R. Larson *Federal Court Awards of Attorney's Fees,* pp. 44–51 (1981).

8. Section 1988 provides in relevant part:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. S.Rep. No. 94–1011, p. 6 (1976), U.S.Code Cong. & Adm.News 1976, pp. 5908, 5913.

At what hourly rate should plaintiff be compensated? Plaintiff avers that he has spent nearly 82 hours working on this case. He asks for an award of $90.00 per hour for 82.1 hours.

Plaintiff asserts that the best way to determine the applicable fee "is to ask him" what his "normal billing rate" is. This Court has never and never will determine hourly rates by simply asking the attorney. Such a method alone would obtain absurd results. "The amount of the fee, of course, must be determined on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). Much more is necessary to establish reasonable rates. Hourly rates should at least encompass some, if not all, of those factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *see also, Northcross v. Board of Education of Memphis*, 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). A determination of the hourly rate to be applied should reflect "the skill requisite to perform the legal service properly," "the customary fee," and the "experience, reputation and ability of the attorney." 611 F.2d at 643. As *Johnson* noted, "the trial judge should closely observe the attorney's work product . . ." 488 F.2d at 718. The customary fee means the ordinary fee "for similar work in the community." *Id.* at 718. The Court is convinced that, although plaintiff is not an expert in civil rights litigation, his experience is adequate and that $90.00 is a reasonable fee in the community in which he practices. The Court, however, is mindful of the limited degree of success involved in this matter, but at this juncture will withhold review of this issue until the time spent by counsel is analyzed.

## C. *Time Spent By Counsel*

In awarding statutorily authorized attorneys' fees in this circuit, district courts must follow the guidelines set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974); *Fain v. Caddo Parish Police Jury*, 564 F.2d 707, 710 (5th Cir.1977); *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388. Accordingly, the Court will analyze the requested award in light of the following *Johnson* factors:

(1) The time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

488 F.2d at 717–19. In computing reasonable attorneys' fees, the district judge must "explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson* affected his decision." *Matter of First Colonial Corp. of America*, 544 F.2d at 1300.

As the Fifth Circuit has urged: "What we require is not a meaningless exercise in parroting and answering of *Johnson's* twelve criteria, but some assurance that the court has arrived at a just compensation based on appropriate standards." *Citing Davis v. Fletcher*, 598 F.2d 469, 470–71 (5th Cir.1979); *see Fain v. Caddo Parish Police Jury*, 564 F.2d at 709.

That plaintiff may be considered a "prevailing party" does not per se answer the question of whether the time spent was

reasonable in relation to the success achieved. *Hensley v. Eckerhart*, 103 S.Ct. at 1941.

■ The plaintiff in this case entered into a settlement in the form of an Offer of Judgment which produced a monetary award in the amount of $500.00. Nevertheless, he has requested attorneys' fees in the amount of $15,170.20, which purportedly represents the number of hours expended by the attorneys multiplied by a reasonable hourly rate for each attorney adjusted upward by a factor of two for the contingent nature of success.[9] The Court, however, rejects the notion that the fee award should have a particular relationship to the amount of monetary recovery. Keeping this in mind, the Court must now consider the question of whether the amount of attorney's fees requested by the plaintiff is proper and reasonable, and, if not, what amount of attorney's fees should be awarded in this case to properly compensate plaintiff for his efforts. The amount of fees is to be determined by assessing and balancing all of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 714; *see also, Norwood v. Harrison*, 581 F.2d 518 (5th Cir.1978). The Court recognizes, however, that while the factors set out in *Johnson* provide guidance, not all the factors are always applicable in determining a reasonable dollar award. *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983).

■ Plaintiff requests $15,170.20 attorney's fees, including cost, for a total of 82.1 hours at an average of $90.00 per hour. Those hours requested also include plaintiff's projected time required to bring this motion. The Court must evaluate each attorney's hourly request in turn and will exclude those hours which were or were not, in the Court's view, expended in furtherance of the plaintiff's claim.

The first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees. Attorney Lanasa, the plaintiff herein, claims that he is entitled to compensation in this case for 82.1 hours of work. It is the view of the Court that he should not receive compensation under the Awards Act for 32.2 of those hours for the following reasons outlined below.

### 1. *The Time and Labor Required*

Plaintiff claims to have spent 10.45 hours working on the federal and state court suit on July 13, 1983 through July 16, 1983. The Court will disallow half of all the time claimed to prepare and draft the federal and state court suits. The plaintiff claims to have a Petition filed in state court that pertains to the same set of facts as his federal claim; however, none of the defendants have ever been served with a Petition in state court for this case, nor has the plaintiff provided the defendants with a copy of such a Petition. The defendants in this case, therefore, should not be required to pay any fees for work done on matters not a part of this suit. Since plaintiff has not specified in his records the amount of time spent on the state court Petition, half of the total will be disallowed.

Plaintiff claims compensation for 15.2 hours spent on defendants' motion to dismiss for the period of August 29, 1983 to February 8, 1984. The hours listed under this category all pertain to the Motion to Dismiss filed by defendants based on the grounds that the plaintiff had improperly named the New Orleans Police Department as a defendant and that his Complaint failed to properly state a claim against the City of New Orleans and Officer Ernest Singleton. The defendants were the "prevailing party" on both aspects of the Motion, with the Court dismissing the New Orleans Police Department as a defendant and instructing the plaintiff to amend his Complaint so as to properly state a claim under Section 1983 against the City of New Orleans and Officer Ernest Singleton. The plaintiff, therefore, cannot be granted any fees for work that was required only because he failed to properly draft his Complaint under the provisions of Section 1983

---

**9.** Added to this figure is plaintiff's request for costs of $392.00.

and the controlling jurisprudence. [*See, e.g., Avalon Cinema Corp. v. Thompson,* 689 F.2d 137 (8th Cir.1982)—no fees allowed for motions that added nothing and were only to correct mistakes].

Plaintiff asserts that he spent 8.8 hours from October 5, 1983 to April 23, 1984 on answering interrogatories. The record reflects that the hours listed under this category all pertain to the plaintiff's failure to properly answer the interrogatories propounded by the defendants. The plaintiff was sent a set of six (6) interrogatories on August 25, 1983. These interrogatories comprised the sum of all the discovery requests made by the defendants to plaintiff. Despite the reasonableness of the interrogatories, plaintiff failed to respond within the delays allowed by law, and it was necessary for the defendants to persistently hound plaintiff until a response was finally received. The record reflects that plaintiff did not send a response to these six interrogatories until October 13, 1983. According to his time sheets, plaintiff spent 1.2 hours on October 5, 1983 drafting a document that he labeled "Answers to Interrogatories." Due to the excessive nature of this entry in light of the document produced, it is obvious to the Court that at least half of the October 5, 1983 hours should be disallowed. Accordingly, the Court will allow plaintiff only 0.6 hours for the answered interrogatories.

■ Following receipt of the inadequate "Answers to Interrogatories" it was once again necessary for defendants to pursue plaintiff in order to obtain appropriate answers to what were reasonable questions. The Court finds that based on the ultimately inadequate nature of plaintiff's response to the interrogatories, none of plaintiff's time spent on these interrogatories after October 5, 1983 will be allowed. The Court finds this to be in accordance with the legislative history of the Awards Act. S.Rep. No. 94–1011, p. 6 (1976). The legislative history of the Awards Act, to repeat, states that counsel should be paid for all time *reasonably* expended on a matter. The Court finds that the time plaintiff spent on answering these interrogatories to be completely unwarranted. Counsel for the prevailing party should make a good faith effort to exclude from a fee requested hours that are unnecessary. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

Next, the plaintiff requests 4.1 hours for preparation of a Pre-trial Order on July 27, 1984. The hours listed in this category were spent discussing and preparing the plaintiff's Pre-trial Order. However, since the plaintiff failed to follow the Court's orders regarding the preparation of the Pre-trial Order and, as the record reflects, refused to respond to the repeated inquiries of defense counsel regarding the Order, and since preparation of the Order requires cooperation by both parties, none of these hours will be allowed.

Once all of the disallowances are made in the plaintiff's reported time, the 82.1 hours that the plaintiff claims he spent on this case are reduced down even more to 49.875 hours. The Court next moves on to a second applicable *Johnson* factor: the novelty and difficulty of the issues involved.

## 2. *The Novelty and Difficulty of the Question*

Plaintiff's original claim that his civil rights were violated by officers of the City of New Orleans Police Department was not an exceedingly difficult issue and established no precedent. The issue of attorney's fees, however, does present a case of first impression. Nevertheless, the Court cannot say that plaintiff "should be appropriately compensated for accepting the challenge" of making new law since it was the Court and not plaintiff who properly raised this issue. *Johnson,* 488 F.2d at 717. This is indeed not the kind of case where plaintiff can claim victory under unusually difficult circumstances. Moreover, the Court finds plaintiff's brief and oral argument of this issue to have lacked the degree of preparation and research necessary for such a novel question.

3. *The Skill Required to Perform the Legal Services Properly*

The Court has closely observed the plaintiff's work product and general ability before the Court. With the exception of Lanasa's failure to correctly address the *pro se* attorney's fees issue, the Court finds his performance satisfactory. However, it is difficult to believe that three competent attorneys could have labored for so many hours on this case. Nevertheless, the Court will address each attorney's hourly claim.

Attorney Westerlund claims to have spent 10.45 hours on this case. It is the view of the Court that 7.0 hours of that work is not justifiably compensable. Reviewing Mr. Lanasa's time sheets, since none were actually provided by Mr. Westerlund, the Court finds that one-half of the 6.3 hours spent on the federal and state court petition is disallowed for the reasons stated above in Mr. Lanasa's request for compensation on those hours. These hours are compensable, however, from the overall hours allowed to plaintiff since plaintiff by his own admission states:

> "*None* of those time sheets reflect any duplication of effort, as only the time of the actual counsel working on the matter was kept for each such sheet. That is, whenever plaintiff himself acted as his *own* counsel, his time was kept. However, if plaintiff was *not* his own counsel, such as in client conferences and at plaintiff's deposition, only the time of plaintiff's *co* -counsel was kept. Hence, there are no duplications of effort, in these time-sheets."

Attorney Angelus claims to have spent 26.65 hours in this case. It is the Court's view that approximately 10 hours of that work is not compensable. Attorney Angelus claims to have spent 5.4 hours on July 30, 1984 and 4.2 hours on August 2, 1984 preparing the Pretrial Order. Since, as we have stated above that the Pretrial Order was not properly prepared, these hours are not compensable. Further, since plaintiff accepted the Offer of Judgment on July 30, 1984, these hours are not reasonable. Mr.

Angelus also submits that 2.5 hours were spent in its court appearance and the trial of the motion for attorneys' fees. The Court finds that the only attorney who was present and presented oral argument on the day of this motion was the plaintiff, Mr. Lanasa. Thus, those hours are not reasonably compensable. The Court finds that the remaining 15.65 hours are allowable from the overall hours allowed plaintiff for the reasons outlined above.

 In applying the *Johnson* test, districts courts have been encouraged by the Fifth Circuit to apply the test flexibly in computing attorneys' fees. *Copper Liquor, Inc. v. Adolph Coors Co. (Copper II),* 624 F.2d 575, 583 (5th Cir.1980); *Fain v. Caddo Parish Police Jury,* 564 F.2d 707, 709 (5th Cir.1977). The Court must carefully "ascertain the nature and extent of the services supplied by the attorney." It is not enough for the Court to mechanically apply the *Johnson* factors. If a court finds that certain factors weigh more heavily than others, the Court should so state in its conclusion of law. *Copper, id.* at 584. Accordingly, since the plaintiff is an attorney, reasonably skilled in this area and his own lead counsel herein, factors 4, 7 and 11 become less important to this case. That is, as plaintiff has suggested, since he was his own lead counsel, the questions of preclusion of other employment [except insofar as his working on this case prevented him from working on his client's cases, potentially for fees], the time limitations imposed by the client and the nature of the professional relationship between the attorney and plaintiff are not significant factors in this matter.

5. *The Customary Fee*

 The Court has already determined that the customary fee in this type of case is $90.00 per hour within the community. The Court finds this to be in accordance with factor 12 of the *Johnson* factors also. The reasonableness of a fee may also be considered in light of awards made in similar litigation within and outside the Fifth

Circuit. *Thomas v. City of New Orleans*, 687 F.2d 80 (5th Cir.1982).

### 6. *Whether the Fee is Fixed or Contingent*

The Court has already determined that plaintiff is entitled to fees at a rate of $90.00 per hour. Plaintiff has also appropriately demonstrated to the Court the rate at which he expects to be compensated by his clients.

### 8. *The Amount Involved and the Results Obtained*

From the outset, it is clear to the Court that defendants offered the plaintiff $500.00 in settlement several months after the plaintiff filed his complaint. Since that is the amount the plaintiff finally accepted as a reasonable settlement, almost one year of work would have been eliminated if the plaintiff had accepted the $500.00 when first made. It is the Court's view that both the number of attorneys employed by the plaintiff in this case and the number of hours which each attorney spent in the case are excessive. Nearly 83 hours is excessive when measured in terms of the complexity of the case and what work was actually done. "However, without a basis in the record for a specific finding as to excessiveness, the Court is constrained not to make a reduction at this point in the number of hours spent to take that factor into account." *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983); *Barrett v. Kalinowski*, 458 F.Supp. 689 (M.D.Pa.1978).

■ However, the Court can make an adjustment in the overall fee based upon the Court's impression of excessiveness without making a specific hourly determination as to each attorney. *Barrett*, 458 F.Supp. at 706. *See also, Peeler v. Longview Independent School District*, 485 F.Supp. 117 (E.D.Tex.1979);[10] *Hughes v. Repko*, 471 F.Supp. 43 (W.D.Pa.1978). The Court is permitted to compare the attorneys' fee to the results obtained and to make an adjustment if the fee is excessive without disallowing specific hours as excessive.

Following, the calculation of an objective basis for the fee award (time spent multiplied by hourly rate—the "lodestar"), the Court must consider the plaintiff's contention that this amount should be multiplied by a factor of 2 in order to reflect the contingent nature of success on this action. It is the view of the Court that no such multiplier should be applied. *See, Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir.1976); *Swicker v. William Armstrong & Sons, Inc.*, 484 F.Supp. 762 (E.D.Pa.1980). *See also, Copper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d at 583, n. 15 (the *Johnson* test as interpreted is similar to the Third Circuit's "lodestar" method of computing fees).

■ Before arriving at a final award, at least two subjective factors must be considered. The first is the contingent nature of success. "The second factor is the extent to which any exceptionally positive or negative quality of an attorney's work mandates increasing or decreasing the lodestar." *Id.* at 583, n. 15. As mentioned earlier, while a modest damage award should not control an attorney's fee award, it is certainly a factor to be considered. *Compare Rheuark v. Shaw*, 477 F.Supp. 897, 930 (N.D.Tex.1979) at n. 16, *with Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263, 1269–70 (N.D.Cal.1979); *see generally, Comment, Attorneys' Fees in Individual and Class Action Antitrust Litigation*, 60 Cal.L.Rev. 1656 (1972).

### D. *Contingency Factor*

■ With regard to the contingency factor, the district court should analyze the plaintiff's burden, his risk in developing the case, and whether there was a delay in receiving payment. *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976) [*"Lindy II"*]. The purpose of the

---

**10.** Plaintiff requested $49,127.00 in fees and was actually awarded $3,000.00.

contingency factors is to increase the overall fee award to compensate for the risks involved. *Hughes v. Repko,* 578 F.2d 483, 488 (3d Cir.1978). With respect to the burdens in this case, the legal issues were fairly straightforward and based on well established principles of law. The risk of litigation in this matter was not considerable. While "success is never guaranteed" in any litigation, and lawyers who are compensated only in the event of victory are entitled to be paid more when successful, the risks are higher in difficult or protracted cases. *Detroit v. Grinnell Corp.,* 495 F.2d 448, 471 (2d Cir.1974); *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981). The Court heard no testimony or evidence relating to whether it was probable that a verdict would be returned against the defendant. With respect to the evaluation of damages, the plaintiff accepted a settlement of this litigation for $500.00 before the matter was litigated. In fact, this same amount was offered to and could have been obtained by the plaintiff within several months after he filed his complaint. Moreover, the fact that plaintiff's settlement demands ranged from $15,000.00 to $5,000.00, despite the $2,000,000.00 damage claim in his complaint, may suggest that plaintiff placed less hope in prevailing on the merits of his complaint. In sum, this simplified the case since plaintiff did not need to expend more effort to prove monetary damages when he chose to settle the case for $500.00. Accordingly, it is the view of the Court that no increase should be made on the basis of the contingency factor.

E. *Quality Factor*

With respect to the quality factor, plaintiff has not requested an increase, so that issue is not before the Court. However, the Court may also evaluate the quality of work performed by plaintiff's counsel in determining whether to decrease the fee award. "The Court must consider the results obtained by counsel and evaluate the professional methods which they used." *Barrett v. Kalinowski,* 485 F.Supp. at 707; *Lindy II,* 540 F.2d 102, 117–18. The

amount of recovery obtained may be the only means by which the quality of an attorney's performance when a case is settled before any significant in-court proceedings. *Lindy I,* 48 F.2d 161, 168 (3d Cir. 1973). For example, a court may "recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested." *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 168 (3d Cir.1975); *E. Richard Larson, Federal Court Awards of Attorney's Fees,* par. 229.

A large number of hours were expended in this case which were unnecessary, considering the results obtained. The case easily could have been settled within three to four months of the date of its filing. The final result which was obtained over a year after filing of the complaint certainly does not represent an efficient method of expediting the case. Accordingly, the Court finds nothing exceptional or unusual about the representation that would merit an increase in the lodestar. Nor was the Court impressed with plaintiff's handling of the novel issue of whether *pro se* attorneys are entitled to fees under the Awards Act. While, as we mentioned earlier, plaintiff did produce some benefits albeit indirectly, the Court cannot say that plaintiff's settlement of this case furthered any strong vindication of the "public interest in affording victims of civil rights violations effective access to the judicial process." *Imprisoned Citizens Union v. Shapp,* 473 F.Supp. 1017 (E.D.Pa.1979).

It is the view of this Court that because of the excessive amount of the hours spent by plaintiff on the tasks which he performed in order to produce an Offer of Judgment in the form finally agreed upon, the fees should be reduced by a factor of 25% to reflect the inefficiency of plaintiff's work, due to the fact that a settlement could have been reached much earlier, and the fact that plaintiff's civil rights claims were neither difficult nor novel. It is this Court's opinion that counsel has shown "demonstrably poor judgment in pursuing

too zealously a claim that did not warrant such intensive effort." *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1097 (5th Cir.1982). In reaching this determination, the Court does not place undue consideration upon the monetary results obtained. The Court, however, recognizes that because of the limited success obtained in this case, the product of hours times a reasonable rate would not be justified. As the Supreme Court has noted in *Hensley:*

> [If,] ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

103 S.Ct. at 1941. However, in a case such as this where only $500.00, a slight amount of money, will be expended by the defendants in order to implement the provisions of the settlement and recovery is not had specifically on any constitutional claim, a further downward adjustment should be made based upon the substantive purposes of the Civil Rights Act and the purpose behind the Attorney's Fees Awards Act. This case represents the kind of exceptional circumstances that warrants a reduction in the lodestar. *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1097 (5th Cir.1982). The Offer of Judgment entered into the record requires no corrective implementation of a constitutional allegation and involves only money damage. *Barrett v. Kalinowski*, 458 F.Supp. 689, 703 (M.D. Penn.1978). There is noticeably absent in this case any consent decree or settlement in which defendants agree to do, or refrain from doing, things that may directly affect plaintiff's civil rights. The benefits and results which plaintiff has achieved are subtle and indirect at best. Accordingly, based upon this Court's perception that the constitutional rights ultimately vindicated by the settlement do not justify an attorney's fees award in excess of $15,000.00, and because a lesser award would serve the purposes of both the Civil Rights Act and the Awards Act, the Court will again reduce the amounts requested by the plaintiff by an additional factor of 50%. In sum, plaintiff's compensable hours are hereby reduced by a total factor of 75%. The remaining hours are compensable at the rate of $90.00 per hour. Such a reduction produces a compensation for plaintiff in the amount of $1,122.19, to be apportioned between plaintiff and co-counsel based on the percentage of hours in total allowed by the Court and each attorney's hours. In addition, and as part of the Offer of Judgment, the Court will award plaintiff cost in the amount of $392.00.

A separate order is contemporaneously entered in conformity with this Minute Entry.